

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Kurt Beachner
_____
                                    Plaintiff
                vs.

Howard University and Adventist Healthcare
_____
                                    Defendant

Case Number  **2022-CAB-006045**

**SUMMONS**

Serve on:
DEFENDANT HOWARD UNIVERSITY
2400 Sixth Street N.W.
Washington, D.C. 20059

To the above named Defendant:

      You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

      You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

David A. Branch
_____
Name of Plaintiff's Attorney

Law Office of David A. Branch & Associates, PLLC
_____
Address

1828 L Street, N.W., Suite 820, Washington, D.C. 20036

(202) 785-2805
_____
Telephone

*Clerk of the Court*

By _____
                Deputy Clerk

Date  December 29, 2022

如需翻译，请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

      IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

      If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                                    Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____

_____ Demandante

contra

Número de Caso: _____

_____ Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____            *SECRETARIO DEL TRIBUNAL*

Nombre del abogado del Demandante

_____            Por: _____

Dirección                                                                  Subsecretario

_____

_____            Fecha _____

Teléfono
如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202) 879-4828 로 전화주세요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                        Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Kurt Beachner

vs

Howard University et al.

Case Number: 2022-CAB-006045

Date: December 29, 2022

☐ One of the defendants is being sued
   in their official capacity.

| Name: *(Please Print)* David A. Branch | Relationship to Lawsuit |
| --- | --- |
| Firm Name: Law Office of David A. Branch & Associates, PLLC | ☑ Attorney for Plaintiff |
| Telephone No.:  Six digit Unified Bar No.: (202)785-2805 | ☐ Self (Pro Se) |
| | ☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury      ☐ 6 Person Jury      ☑ 12 Person Jury

Demand: $$5,000,000 _____      Other: *See* Prayer for Relief.

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: Not applicable.      Judge: _____      Calendar #: _____

Case No.: _____      Judge: _____      Calendar#: _____

---

NATURE OF SUIT:      *(Check One Box Only)*

**A. CONTRACTS**                          **COLLECTION CASES**

| | | |
| --- | --- | --- |
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent | Over $25,000 Consent Denied |
| ☑ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent | Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration Award (Collection Cases Only) | |

**B. PROPERTY TORTS**

| | | |
| --- | --- | --- |
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**

| | | |
| --- | --- | --- |
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, Not Malpractice) |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 19 Wrongful Eviction |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 20 Friendly Suit |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 21 Asbestos |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 22 Toxic/Mass Torts |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, Not Malpractice) | ☐ 23 Tobacco |
| ☐ 08 Fraud | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE          IF USED

# Information Sheet, Continued

## C. OTHERS

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

## II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

## D. REAL PROPERTY

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

December 29, 2022
_____
Date

eFiled
12/29/2022 12:39:02 AM
Superior Court
of the District of Columbia

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

|  |  |  |
|---|---|---|
| **KURT BEACHNER** | ) | |
| **5546 Angus Heel Drive** | ) | |
| **Warrenton, Virginia 20136** | ) | |
| | ) | |
| *Plaintiff,* | ) | **Civil Action No. 2022-CAB-006045** |
| | ) | |
| **v.** | ) | **Jury Trial Demand** |
| | ) | |
| **HOWARD UNIVERSITY** | ) | |
| **2400 Sixth Street N.W.** | ) | |
| **Washington, D.C. 20059** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **ADVENTIST HEALTHCARE** | ) | |
| **820 West Diamond Avenue, Suite 600** | ) | |
| **Gaithersburg, MD 20878** | ) | |
| | ) | |
| *Defendants.* | ) | |

## COMPLAINT

1.      Comes now Plaintiff Kurt Beachner ("Plaintiff", "Plaintiff Beachner" or "Mr. Beachner"), by and through his attorneys, and hereby files this Complaint against Defendant Howard University (hereinafter "Defendant Howard" or "Howard University") and Defendant Adventist Healthcare (hereinafter "Defendant Adventist" or "Adventist") (hereinafter collectively "Defendants") Plaintiff Beachner seeks relief pursuant to the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.* ("DCHRA"); Title VII of the Civil Rights Act of 1964, as amended ("Title VII") 42 U.S.C. §§ 2000 *et seq.*; the District of Columbia Family and Medical Leave Act ("DCFMLA") D.C. Code §§ 32-501, *et seq.*; and the Family and Medical

1

Leave Act ("FMLA") 29 U.S.C. §§ 2601 *et seq*. and 29 C.F.R. §§ 825 *et seq*., including but not limited to declaratory, injunctive, and other equitable relief, compensatory and punitive damages and litigation expenses and reasonable attorneys' fees, based on Defendants' discriminatory, harassing, and retaliatory actions against Plaintiff.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this complaint pursuant to D.C. Code § 11-921.

3.      Plaintiff has exhausted all administrative remedies prior to filing suit.

4.      Venue is proper in this court in that the events and omissions giving rise to Plaintiff's claims occurred here in the District of Columbia and Defendants may be found here.

## PARTIES

5.      Plaintiff Kurt Beachner is a Caucasian male with twenty-two years of experience in the cardiovascular field and was the former Manager of Cardiovascular Invasive Services of Howard University Hospital from January 6, 2020 to April 7, 2022.

6.      Defendant Howard University Hospital is a private, nonprofit healthcare facility and a subdivision of Howard University, based in Washington, D.C. Howard University is an employer within the meaning of D.C. Human Rights Act ("DCHRA") and Title VII of the Civil Rights Act of 1964 ("Title VII").

7.      Defendant Adventist Healthcare is not-for-profit health system, which provides healthcare services in the Washington, D.C. region. Effective February 2020, Defendant Howard and Defendant Adventist entered into a Management Service Agreement ("MSA") in which,

Defendant Adventist was directly involved in selecting and overseeing the leadership with the Hospital.

**<u>FACTS</u>**

8.      Plaintiff began employment with Howard University Hospital ("Hospital") as a travel hire in November 2019 and initially served as the Interim Manager of Cardiovascular and Vascular Services. On January 6, 2020, Mr. Beachner was hired full time and signed an employment contract that required a bonus at the end of one year of employment. Mr. Beachner obtained a bachelor's degree in radiology, educated nurses and "Techs" for certification programs in Maryland, and is certified in Invasive Cardiology.

9.      As the Manager of Cardiovascular and Vascular Services, Plaintiff Beachner was responsible for planning and directing the daily administrative and management activities of Cardiology department, including scheduling, staffing, and budgetary, regulatory, quality compliance.

10.      Under the MSA, Defendants selected Anita L.A. Jenkins ("CEO Jenkins") to serve as the new CEO of Howard University and placed others in leadership positions in an effort to change the overall strategy of how the Hospital ran its operations.

11.      Throughout his employment, Mr. Beachner had been regarded as an outstanding employee, and was known for his professionalism and exceeding expectations in his position. After being hired, Mr. Beachner made notable and impactful changes in practices, recognizable to staff and vendors.

12.     One year into his tenure, on December 3, 2020, Mr. Beachner received an email from Seth Peterson, the Peripheral Territory Manager-Vascular Intervention, Image Guided Therapy Devices which including the following comments.

> "I just wanted to send you a message regarding the changes I have noticed since you took over as the manager of the Cath Lab.  I have been working with your lab for over three years and since your arrival, I have noticed several dramatic improvements in daily operations, the consistency of your staff, and the overall general success of the lab.  From an industry standpoint, you have been extremely helpful in providing the necessary support for me and others to provide the best service and support to your doctors, and subsequently your patients. I appreciate your partnership and hope to continue to have the opportunity to work with you going forward."

13.     Despite his performance and professionalism, Mr. Beachner was affected by abusive, discriminatory and unprofessional behavior by an African American female, Roxane Joseph.   Between January 6, 2020, to February 2022, Mr. Beachner and Ms. Joseph initially worked together as colleagues. During this time, Plaintiff Beachner noticed Ms. Joseph exhibited constant unprofessional and abusive behavior. Mr. Beachner became aware that Ms. Joseph did not respect him as a professional, and in her opinion, he was "just a tech."   Mr. Beachner suspected Ms. Joseph's issues stemmed from the fact that Ms. Joseph did not have any Cardiovascular and Vascular experience. Mr. Beachner reported Ms. Joseph's behavior to the Human Resources Department, where he was asked whether he would be interested in having Ms. Joseph undergo training. Although Mr. Beachner confirmed that training would be appropriate, Mr. Beachner was not aware of any training was offered to Ms. Joseph.  In February 2020, Ms. Joseph was promoted to a Line Manager and became Mr. Beachner's supervisor.

14.     Once Mr. Beachner began reporting to Ms. Joseph, he was subjected to Ms. Joseph's inappropriate and unprofessional behavior. Mr. Beachner was written up by Ms. Joseph

for copying an individual on an email after reporting to Ms. Joseph for just one week. Mr. Beachner attempted to resolve the issue by explaining he was asked a question via email, and he simply copied Ms. Joseph in the email conversation as she was his supervisor.  In addition to issuing Mr. Beachner an unjustified written reprimand, Ms. Joseph confronted him and sternly stated that he was to solely report to her.  Mr. Beachner spoke with Maurice Roche, the Human Resources Director, and he noted that there seemed to be a "control issue" with Ms. Joseph. Mr. Beachner expressed a need to schedule a meeting and Mr. Roche made a note of this, but a meeting never occurred. Mr. Roche indicated to Mr. Beachner that all concerns regarding compliance should be relayed to Brayelin Sampson and Leticia Lane, in his office.

15.    Throughout Ms. Joseph's supervisory role, Mr. Beachner was regularly and unreasonably written up and harassed. At various times, Ms. Joseph created: (1) a false write up for Mr. Beachner not covering shifts that were truthfully covered; (2) a write up of Mr. Beachner not covering shifts which were added by extra times to include the respiratory department, which was not within Mr. Beachner's job function or department; and (3) a write up seeking a request to prevent Mr. Beachner from providing input for the cardiology nurses. Ms. Joseph's actions, specifically her write ups and comments, elicited that Mr. Beachner was working improperly. Furthermore, it has created a communicational situation where Mr. Beachner faced extreme difficulty reporting incidents.

16.    Additionally, Ms. Joseph dismissed Mr. Beachner's authority as a manager in the presence of Mr. Beachner's direct subordinates. Ms. Joseph openly called him a liar, and repeatedly told the nurses who reported to Mr. Beachner that they should not go to him. Mr. Beachner was constantly bullied by Ms. Joseph who spoke to him in any manner she desired,

5

including berating, and scolding him, faulting him for matters which were not his fault, telling him "You better do as I say" and that he would be "in trouble" if he did not follow her orders and frequently threatened her job. Ms. Joseph would dismiss Mr. Beachner during meetings, subject him to report to her and the nursing department for all communications, ignore him to the extent of refusing to share an elevator and physically avoiding Mr. Beachner in the halls.

17.     In July 2020, Mr. Beachner reported the initial write up incident with Human Resources specifying that he was being harassed and received a false written reprimand from Ms. Joseph. Mr. Beachner expressed to a HR representative that he would like to have a meeting with Ms. Joseph, himself, and a representative from HR.   HR subsequently requested for Mr. Beachner to meet with Ms. Joseph's supervisor, Dr. India Medley.   Mr. Beachner attempted to meet with Dr. Medley, but ultimately, she never met with him.

18.     Mr. Beachner informed Human Resources that a meeting with Dr. Medley had not occurred, subsequently, Mr. Beachner observed tension in the workplace and staff began mimic Ms. Joseph's practice of undermining his authority.

19.     After receiving no assistance from Human Resources, Mr. Beachner requested an internal mediator, Devitia Baldwin, but was advised that Ms. Baldwin no longer worked as a mediator.

20.     Mr. Beachner was informed that he was not the only person to have complaints against Ms. Joseph. Many other employees, such as, nurses and staff have discreetly complained regarding Ms. Joseph's behavior.

21.     In November 2020, Mr. Beachner contacted Howard University's Employee Relations to file a grievance due to the lack of improvements to the work environment. Mr.

Beachner was informed to contact the EEO Director, Michelle Chapman, of Howard University's Employee Relations.

22.     On January 29, 2021, Mr. Beachner contacted Ms. Chapman and expressed an interest in pursuing a separate complaint. As instructed, Mr. Beachner then also emailed his additional complaints to Ms. Leticia Lane. Other individuals including Pamela Eastering, President of the local Union 2094 witnessed Ms. Joseph's discriminatory treatment of Mr. Beachner.

23.     On November 13, 2020, Ms. Eastering was present at a staff meeting and recalled that the Cardiac Technologist had a meeting with Ms. Joseph, Director of Critical Care and the Catheterization ("Cath") lab in Cardiology.   She stated that she was appalled at the way Ms. Joseph conducted herself in meetings and particularly the meeting at hand.  Ms. Easterling noted that the way Ms. Joseph spoke to Mr. Beachner was disrespectful and demeaning.

24.     In November 2020, Mr. Beachner was written up for performing his job duties.

25.     On December 8, 2020, Mr. Beachner sent an email to Michelle Chapman regarding an incident follow through TEE Clean Quote:

> "Attached is the write up Submission of Quotes.  The reason this needs to be addressed why Mrs. Roxane Joseph decided to write me up for obtaining quotes for TEE Clean when in fact, she was on every email and also, we had follow[ed] up on the Equipment for Process Improvement.  Even a letter from the Associate Director of Material Management Nereida Crann was involved in trying to understand why Mrs. Joseph went to such great lengths to write me up.  She stated that this was our process and encouraged managers to plan for process of improvement.  To further add injury to insult after the right up she is asking me to set up the vender in a separate monthly meeting."

7

26.     On December 30, 2020, Mr. Beachner sent Ms. Chapman a follow-up email and requested that she interview staff and physicians, including Deborah Williams, Willie Carnegie and Kakra Hughes, to verify his version of events.  Ms. Chapman failed to do so.

27.     Ms. Joseph's behavior has impacted patient care.   In 2020 and 2021, there was a reoccurring issue of broken equipment. The cardiology team followed the communication process of relaying the need to address broken equipment.  This issue was grossly mismanaged by Ms. Joseph when she requested an additional quote from the vendor.  Dr. Ghazvini and Dr. Oke had concerns about the process of addressing broken equipment being delayed.  Ms. Joseph had requested second quotes for equipment that urgently needed to be back on-line. Mr. Beachner expressed there were great concerns as even the Chief Operating Officer wanted the issue resolved and there was no reason for a second quote for this equipment.

28.     According to the terms of his employment, Mr. Beachner was due a bonus check agreement on January 6, 2021.

29.     On January 22, 2021, Mr. Beachner sent an email to Maurice Roche to inquire when he can expect to receive his bonus due on his contract.  He had previously sent an email on January 14, 2021, but there was no response. As of February 2, 2021, Howard University Hospital still had not paid Mr. Beachner his sign-on bonus, and Mr. Beachner had to seek an attorney for assistance. The bonus check was not available until February 24, 2021.

30.      In late February 2021, Ms. Joseph met with Mr. Beachner to discuss the fact that if he was absent or left work early, he should get coverage. Mr. Beachner advised her that he would have to leave early on March 5, 2021.

31.     On March 5, 2021, after Mr. Beachner left work early, he was called by Ms. Joseph at 3:45 p.m., and she demanded that he come to her office.  He reminded her that he has taken leave and was at the airport with his daughter.  Ms. Joseph became irate and began yelling at Mr. Beachner over the telephone. She was so loud that she was overheard by Mr. Beachner's daughter who was shocked that Ms. Joseph was using that tone to speak.  Mr. Beachner followed up this call with a request to be removed from reporting to Ms. Joseph.  No action was taken on his request.

32.     On March 4, 2021, Ms. Chapman concluded her EEO investigation and found that Mr. Beachner's charges could not be sustained.  She prepared a memorandum with her findings; however, the memorandum indicated that there were valid concerns regarding professional interactions between Mr. Beachner and Ms. Joseph, which should be addressed by Dr. Medley. Subsequent notice of this memorandum was sent in March, but there was no change in the supervisor and manager role between Mr. Beachner and Ms. Joseph.  As the issues persisted, Mr. Beachner raised his concerns to Human Resources once again, and Human Resources recommended to go to the EEO through Howard University.

33.     In October 2021, Ms. Joseph began to take deliberate, escalating steps to discipline Mr. Beachner to result in his termination. First, on October 1, 2021, Ms. Joseph issued Mr. Beachner an official written warning regarding his alleged failure to ensure EKG coverage during the evening shift the prior week and on several occasions on the night shift.   These accusations were false. Mr. Beachner retained and pulled his own records and met with the Technician, Sheena Greene, on duty to follow up on the alleged date September 26, 2021.  Ms. Greene stated that Respiratory was to cover the night Stat EKG and that Mr. Beachner had failed

9

to develop that plan.   Mr. Beachner spoke to Mr. Zellnick, Respiratory Director, regarding the process they were working on after Dexter Graham, the night EKG Technician, fell ill.   The conversation was much different than the allegation Ms. Joseph stated in her write up. Mr. Zellick stated that an EKG Machine was deployed with training, and they were always informed of their duties and agreed to cover Night Stat EKGs.

34.     Ms. Joseph issued Mr. Beachner a letter of reprimand on October 7, 2021, for failure to relieve a technician, Lala Chonai when she requested a break, and for verbally intimidating her after he was informed of her complaint.   On October 14, 2021, Mr. Beachner reported to Human Resources that the accusation in Mr. Joseph's write up was false.   He noted that the write up was concerning because she accused him of intimidating an employee.   Mr. Beachner believed this accusation could damage his professional career.   He also repeatedly expressed that he had made complaints about workplace violence and had followed all the appropriate steps to resolve the matter. However, Howard University had forced him to work in a hostile work environment and had not followed its own policy HUM 1314-21.

35.     On November 2, 2021, Mr. Beachner sent an email to Ms. Chapman expressing that he was very concerned that Howard University Hospital kept ignoring his right to be free from workplace harassment.   He specifically complained that:

  "[t]his is extremely serious and I would like to file another complaint concerning racial discrimination and hostile work environment.   It is important to note that my Director, Roxane Joseph, Cardiology, ICU Director is using retaliation against me.   He continued "[i]t was noted in the first complaint against Roxane Joseph provided serious concerns about the interactions with me.   Nothing was ever done to take away the fear I have of reporting to someone I had originally complained about.   There was no coaching that took place with Mrs. Joseph and Howard University Never Met with me to assure I

would be free from a Hostile Work Environment.  My health and judgment are greatly affected each day I report to this harassing environment."

36.     On November 2, 2021, Ms. Lane, the Labor Relations Manager, sent Mr. Beachner an email advising that "[t]he findings of the investigation of your complaint regarding Ms. Roxane Joseph are included in the attached memorandum." Mr. Beachner responded the same day, and specifically inquired if the investigation included the recent incidents of slander. The Memorandum simply included a statement that Howard University Hospital is committed to providing employees with an environment free from harassment; that Mr. Beachner had filed a complaint and a finding of a hostile work environment and harassment could not be sustained. There was no attempt to review or weigh any of the allegations or evidence.

37.     In response, Mr. Beachner sent an email to update her on how nothing had happened since March 2021 and that Ms. Joseph continues to harass him.  After receiving advice from Ms. Chapman, Mr. Beachner then submitted a second complaint against the hospital in regard to the facility failing to take his circumstances seriously.   However, immediately upon receiving the second complaint, the hospital closed the first complaint case from last year. Mr. Beachner also learned of efforts by Ms. Joseph to replace him in his position.

38.     On November 2021, David Burnes sent an email to Mr. Beachner which stated:

"I was a travel nurse working at Howard University Hospital form March through the end of June 2020.   Near the end of my contract, I met with the ICU/Cardiology Director Roxane Joseph.   We had a meeting where I was asked if I interested in a full-time position in the Cath Lab at Howard. In addition to being offered the position it was implied that I would eventually take over Mr. Beachner's position as manager of the department.  I passed on this offer to pursue other opportunities."

39.     On November 4, 2021, Mr. Beachner sent an email to the Department to address ethical issues. However, rather than receiving advice or instructions, Mr. Beachner was falsely accused of sending a wildly inappropriate email and was reprimanded by Chief Executive Officer ("CEO"), Ms. Anita Jenkins and Dr. Medley. Mr. Beachner stated in his email to CEO Jenkins:

> "As the Operational Cardiovascular Manager of Howard University, it is my duty to report unethical concerns.  Last year I was given the opportunity to meet with [C]ath lab nurses to present each of them with a fair annual evaluation.  These evaluations were shared with my supervisor for final sign off.   This year the request was denied.  Roxane Joseph performed the nurses evaluations without even monitoring or observing their performance during the entire year.  Roxane maybe walks through Cath lab once a month but is unaware of process and procedures in the Cath lab.  The nurses were not only robbed of a fair evaluation but was placed on a very uncomfortable situation.  During their evaluations, Roxane Joseph, asked a few of them if they would take over my position as the Cath Lab Manager and to get back to her.  There is very unprofessional as a director and it does not meet the CARE values and violates policies. The Cath nurses came to me very upset about how their evaluations went and gave great details to what was said and asked during the evaluation. I am requesting that I am given the opportunity to provide vital input into our Cath-lab nurses annual evaluation.  I am the nurse's direct supervisor and oversee their day-to-day performance. After several written request[s], I am requesting Roxane Joseph, be removed from my reporting structure as Director of Cardiology.  I will continue to build this lab for its professionalism and strengths that are needed to take on complex PCIs and added revenue for Howard University Hospital, and our Advance Cardiovascular Service Lines."

40.     Mr. Beachner sent the email to CEO Jenkins, Dr. Medley, Dr. Helen Tuffee, Dr. Urooj Fatima, Dr. Deborah Williams and Maurice Roche. CEO Jenkins responded to the group on the email in a cooperative tone, "Thank you for your communique. I request that you schedule a conversation regarding your perspective of these matters." and then struck a very different tone when communicating with Mr. Beachner.  CEO Jenkins responded to his email approximately 15 minutes after his email:

"I am concerned about your language in your email.  The title alone is wildly inappropriate It is accusatory and inflammatory, and undoubtedly false.  It was also inappropriate to include physicians on employee matters.  This is an unfortunate leadership example on your part.   . . . I expect you to elevate any concerns to through your leadership chain  of command."

Dr. Medley separately emailed Mr. Beachner shortly as she received his email, and stated:

> "As the Chief Nursing Officer, it is my responsibility to receive your concerns and any complaints particularly when it comes to your performance and that of your immediate supervisor, Mrs. Roxane Joseph. To date, you have not bought any of your "unethical concerns" to my attention. As you know, you are advised to follow to proper chain of command, effective immediately."

41.     As a result of the treatment from Ms. Joseph and the response from CEO Jenkins and Dr. Medley, Mr. Beachner suffered an emotional breakdown on November 4, 2021.

42.     On November 8, 2021, Dr. Medley sent Mr. Beachner an email expressing concern that she had not heard from him:

> "Dear Kurt: I am concerned that I have not heard from you as advised (email below) regarding your complaint RE: Unethical Concerns from your immediate supervisor, Mrs. Roxane Joseph. Additionally, it is concerning that you did not attend the Leadership Meeting on Thursday, November 4, 2021-as required, nor did not contact Brooke or me in reference to your absence. I would like to meet with you this week to discuss your concerns, complaint,  responsibilities, performance, etc.  Brooke will send you a meeting invitation."

43.     Dr. Medley met with Mr. Beachner to discuss events surrounding the communications with CEO Jenkins and Ms. Joseph. Mr. Beachner reiterated all his concerns with Ms. Joseph and her actions of retaliation in attempting to find his replacement. Dr. Medley provided condolences and stated there is a no tolerance policy for this type of behavior and requested proof. Mr. Beachner advised he did have proof, however, many of the cardiology nurses are afraid to speak out and wanted to maintain job security. He also noted three nurses

were resigning to due work-related issues. Later, Dr. Medley received an email from a former Cardiology Nurse confirming Ms. Joseph was attempting to replace Mr. Beachner. Dr. Medley informed and reassured Mr. Beachner that Ms. Joseph would be on administrative leave while she personally investigated the situation, and his job was secure. Furthermore, Dr. Medley reassured that after reporting his supervisor, Ms. Joseph, there would be no tolerance for any retaliation.

44. Mr. Beachner reached out to the President of Cardiology Service Line Leader, Helen Tuffi, to inform her of the meeting with Dr. Medley. However, she advised that Mr. Beachner was being pushed out of his position. Mr. Beachner received information of a requirement of a nursing license for his directorial position, which Mr. Beachner did not possess. A new nursing licensee requirement was a shock to Mr. Beachner as his colleague, Mr. Derick Perkins, maintained equivalent education and certifications, not including a nursing license, but he currently is still maintaining supervisory authority over nurses in Interventional Radiology. Moreover, Mr. Perkins has since been promoted to Executive Director within the unit, which include similar duties to Mr. Beachner's role. Both units maintained the same model of a Tech. managing and operating the Cath. Lab. Also, at one point, CEO John Tolmie and Assistant Chief Nursing Officer, Sandy Mavin met with Mr. Beachner and clearly conveyed that under the model, Ms. Joseph was appointed to supervise both Cardiology and Interventional Radiology Nurses. Mr. Beachner was never to be given supervisory authority over the nurses. Mr. Beachner was responsible for fourteen (14) Tech subordinates that regularly reported to him.

45. In November 2021, Mr. Beachner requested and was granted Family Medical Leave ("FMLA") due to the work-related stress work including anxiety and depression.

14

Originally, Mr. Beachner was initially placed on three weeks of leave, but it was later extended until February 28, 2022.

46.     On March 1, 2022, Mr. Beachner attempted to return to work with a letter from his primary physician. Mr. Beachner provided the letter to both Dr. Medley and FMLA leave specialist, Janelle Brown.

47.     On March 2, 2022, Mr. Beachner was denied his return to work until March 10th, 2022, due to Howard University's inquiry into Mr. Beachner's doctor's note. Howard University improperly requested for the doctor's note to state Mr. Beachner's mental health was cleared. Mr. Beachner's doctor denied this request as this would be a HIPPA violation.

48.     On March 17, 2022, at 2:57 p.m., Mr. Beachner sent to an email to various staff employees, including Ms. Joseph, in effort to address safety concerns and "Cath lab awareness." Within an hour, Mr. Beachner received an invite with Mr. Roche for a meeting for later that same day at 4:00 p.m. During the meeting, Mr. Roche informed Mr. Beachner his position is being eliminated without any warning.

49.     The next day, March 18, 2022, Mr. Roche sent a letter to Mr. Beachner reiterating the decision to terminate the Manager of Cardiology, effective April 7, 2022. The letter cited the decision for the job elimination is due to a sudden restructuring of position to a directorial position requiring a nursing license, which Mr. Beachner did not possess. The letter went on to state that Mr. Beachner would be on administrative leave until April 7, 2022. Upon his return, Howard University eliminated his position and failed to follow their mandated policies.

50.     On December 14, 2021, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Office.

51.     On March 22, 2022, Plaintiff filed an Amended Charge of Discrimination.

52.     On October 3, 2022, Plaintiff received his Notice of Right to Sue. Plaintiff has exhausted all his administrative remedies.

**COUNT I**
**Violation of the District of Columbia Human Rights Act**
**D.C. Code §§ 2-1401 *et seq.***
**Race and Sex Discrimination**
**Disparate Treatment and Hostile Work Environment**

53.     Plaintiff adopts by reference each of the allegations in the paragraphs above.

54.     At all pertinent times, Defendant Howard University Hospital were employers under the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.*

55.     At all pertinent times, Plaintiff is an employee entitled to protection under the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.*

56.     The D.C. Human Rights Act prohibits an employer from taking adverse action against an employee or subjecting an employee to a hostile work environment based on the employee's race and sex and forbids retaliation because an individual complains about discrimination.

57.     Defendants, in violation of the D.C. Human Rights Act, knowingly and intentionally subjected Plaintiff to disparate treatment based on his race when: despite Mr. Beachner's success within his position, Defendants eliminated his job under false pretenses under the guise of a claimed job elimination in order to terminate his employment. Although Mr. Beachner's position was eliminated, his African American colleague, whom also did not obtain the required nursing license, was promoted to Executive Director, which involves supervisory

16

authority over nurses in Interventional Radiology Unit. This position has very similar duties to the supervisory position Mr. Beachner was found unable to maintain due to not obtaining a nursing license. It is evident the reasons given for the elimination of Plaintiff's position are false as Mr. Beachner was treated differently than similarly situated African American employees in his workplace and even differently in the manner in which he was terminated; and the Defendant has provided a shifting articulation of the reason for his termination.

58.     Defendants, in violation of the D.C. Human Rights Act, knowingly and intentionally subjected Plaintiff to a hostile work environment based on his race and sex when: 1) he was treated differently than his African American colleagues despite his exceptional performance as he was denied his ability to fully and freely maneuver within his role to perform his duties, subjected to excessive scrutiny of his work and actions, and openly criticized and demeaned, which stymied his career; 2) Ms. Joseph—African American female consistently humiliated him at meetings, undermined his authority, issued false reprimands and false accusations about his performance, and engaged in efforts to replace him; and 3) Ms. Joseph specifically targeted him through her write ups and berating comments such as openly called him a "liar", "You better do as I say" and that he would be "in trouble" if he did not follow her orders and frequently threatened Mr. Beachner's job security; 4) Ms. Joseph also dismissed Mr. Beachner's authority as a manager in the presence of Mr. Beachner's direct subordinates and subjected Mr. Beachner to confrontations, false reprimands for matters which were not his fault; repeatedly interfered with chain of communication when she told the staff who reported to Mr. Beachner that they should not go to him; 5) Defendants did not follow their own policies in his job elimination as evidenced by the promotion of other employees.

17

59.     Further, the Hospital leadership placed and managed by Defendant Adventist failed to follow its own personnel policies when it did not investigate his claims of race and sex based discriminatory actions of Ms. Joseph and how it fostered a hostile work environment. Defendant Adventist oversaw and managed the operations and activities of Hospital but neglected and disregarded policies which aided discriminatory and retaliatory practices in the workplace. It was during CEO Jenkins' tenure, Mr. Beachner suffered majority of the workplace harassment. At various times, Plaintiff alerted appropriate personnel regarding his concerns, but none were given any attention or solution.

60.     In addition, Plaintiff was reprimanded and later terminated based on interactions with Defendants, when in fact, all Plaintiff did was attempt to perform his job and report issues which impeded his ability to perform his job. Plaintiff was subjected to a hostile work environment when he was subjected to abusive treatment by the Defendants as noted above.

61.     There was no legitimate reason for any of these actions.

62.     On information and belief, in addition to the practices enumerated above, Defendants may have engaged in other discriminatory practices that are not yet fully known.

63.     As a direct and proximate cause of the Defendants' actions, Plaintiff lost his position as Manager of Cardiovascular Invasive Services, wages, and benefits, and suffered damage to his professional reputation, emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

**COUNT II**
**Violation of the District of Columbia Human Rights Act**
**D.C. Code §§ 2-1401 *et seq.***
**Retaliation**

64.     Plaintiff adopts by reference each of the allegations in the paragraphs above.

65.     At all pertinent times, Defendant Howard University Hospital were employers under the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.*

66.     At all pertinent times, Plaintiff is an employee entitled to protection under the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.*

67.     The D.C. Human Rights Act prohibits discrimination in employment and retaliation against an employee for engaging in protected activities including filing complaints of discrimination.

68.     Plaintiff engaged in protected activity when: 1) in July 2020, Mr. Beachner reported the initial write up incident with Human Resources specifying that he was being harassed and received a false written reprimand from Ms. Joseph; 2) in November 2020, he contacted Howard University's Employee Relations to request to file a grievance; 3) on December 8, 2020 and again on January 29, 2021, Mr. Beachner contacted the EEO Director, Michelle Chapman, Michelle Chapman, of Howard University's Employee Relations to express complaints of discriminatory treatment by Ms. Joseph and leadership in the workplace; 4) on November 2, 2021, Mr. Beachner sent an email to Ms. Chapman and expressed that he was very concerned that Howard University Hospital continued to disregard his right to be free from workplace harassment.

69.     Defendants, in violation of the D.C. Human Rights Act, knowingly and intentionally engaged in unlawful retaliation against Plaintiff when: Ms. Joseph's actions, specifically her write ups and comments, elicited that Mr. Beachner conducted his work improperly which caused Mr. Beachner to face extreme difficulty reporting incidents; Ms. Joseph dismissed Mr. Beachner's authority as a manager in the presence of Mr. Beachner's direct subordinates; subjected Mr. Beachner to berating, scolding, confrontations, false reprimands for matters which were not his fault; and ultimately the elimination of his position under false pretenses.

70.     Defendants had no legitimate business reason for any such acts.

71.     On information and belief, in addition to the practices enumerated above, Defendants may have engaged in other discriminatory practices that are not yet fully known.

72.     As a direct and proximate cause of the Defendants' actions, Plaintiff lost his position as Manager of Cardiovascular Invasive Services, wages, and benefits, and suffered damage to his professional reputation, emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

**COUNT III**
**Violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII")**
**42 U.S.C. §§ 2000 *et seq*.**
**Race and Sex Discrimination**
**Disparate Treatment**
**Hostile Work Environment**

73.     Plaintiff adopts by reference each of the allegations in the paragraphs above.

74.     At all pertinent times, Defendants were employers subject to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

75.     At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

76.     Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of race with respect to an employee's compensation, terms, conditions, or privileges of employment.

77.     Defendants violated Title VII of the Civil Rights Act of 1964 when they subjected Plaintiff to disparate treatment based on his race by: Mr. Beachner was treated differently than similarly situated African American employees in his workplace as shown by Defendants' elimination his job under the guise and ruse of a claimed job elimination in order to terminate his employment.  Meanwhile his African American colleague, whom also did not obtain the required nursing license, was promoted to Executive Director, which involves supervisory authority over nurses in Interventional Radiology Unit; and thus, Defendants have provided a shifting articulation of the reason for his termination.

78.     Defendants, through their agents, violated Title VII of the Civil Rights Act of 1964 by subjecting Plaintiff to a hostile work environment when: Defendants utilized favoritism when they placed certain individuals in significant authority positions without mandatory certifications; Mr. Beachner's supervisor—Ms. Joseph female specifically targeted him through her write ups, reprimands, and comments such as, "liar", "You better do as I say" and that he would be "in trouble" if he did not follow her orders and frequently threatened Mr. Beachner's job security. Ms. Joseph repeatedly humiliated Mr. Beachner amongst work colleagues, undermined his authority, issued false reprimands and false accusations about his performance,

and engaged in efforts to replace him; and the reasons given for the elimination of Plaintiff's position were false.

79.     Further, Defendants did not follow their own policies in his investigating Mr. Beachner's complaints as well as his termination as evidenced by the promotion of other employees and even in the manner in which he was terminated. The Hospital leadership placed and managed by Defendant Adventist failed to follow its own personnel policies when it did not investigate his claims of race based discriminatory actions of Ms. Joseph and how it fostered a hostile work environment. Defendant Adventist oversaw and managed the operations and activities of Hospital but neglected and disregarded policies which aided discriminatory and retaliatory practices in the workplace. It was during Adventist CEO Jenkins' tenure, Mr. Beachner suffered majority of the workplace harassment. At various times, Plaintiff alerted appropriate personnel regarding his concerns, but none were given any attention or solution.

80.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered loss of income and other financial benefits, emotional distress, pain, suffering, stress, humiliation, loss of enjoyment of life, and damage to his reputation and career, and further loss of future professional opportunities.

81.     Defendants had no legitimate business reason for any such acts.

82.     Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendants may have engaged in other discriminatory practices that are not yet fully known.

**COUNT IV**
**Violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII")**
**42 U.S.C. §§ 2000e *et seq*.**
**Retaliation**

83.     Plaintiff adopts by reference each of the allegations in the paragraphs above.

84.     Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's color, religion, sex, age, national origin, or to limit, segregate, or  classify his employees or applicants for employment opportunities or otherwise adversely   affect his status as an employee, because of the individual's race, color, religion, sex, age, or national origin.

85.     At all pertinent times, the Defendants were employers subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a).

86.     At all pertinent times, Mr. Beachner was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a).

87.     Plaintiff is a member of a protected class due to his race, Caucasian. Mr. Beachner engaged in protected activity by alleging discriminatory actions of his supervisor, Ms. Joseph on various instances such as: 1) in July 2020, Mr. Beachner reported the initial write up incident with Human Resources and specified that he was being harassed and received a false written reprimand from Ms. Joseph; 2) in November 2020, he contacted Howard University's Employee Relations to request to file a grievance; 3) on December 8, 2020 and again on January 29, 2021, Mr. Beachner contacted the EEO Director, Michelle Chapman, Michelle Chapman, of Howard

University's Employee Relations to express complaints of discriminatory treatment by Ms. Joseph and leadership in the workplace; 4) on November 2, 2021, Mr. Beachner sent an email to Ms. Chapman to express that he was very concerned that Howard University Hospital continue to ignore his right to be free from workplace harassment; 5) in November 2021, Mr. Beachner met with Dr. Medley and discussed events surrounding the his concerns with Ms. Joseph and her actions of retaliation through search to find his replacement.

88.     In violation of Title VII of the Civil Rights Act of 1964, Defendant knowingly and intentionally subjected Plaintiff to unlawful retaliation when: in February 2021, Mr. Beachner had to seek an attorney for assistance to obtain his sign-on bonus in accordance with his employment contract; from October 2021, Ms. Joseph took deliberate steps to discipline Mr. Beachner to result in his termination which included official written warnings, letters of reprimand, belittling commentary, and search for his replacement; Defendants eliminated his job under false pretenses of a claimed job elimination in order to terminate his employment.

89.     Defendant had no legitimate business reason for any such acts.

90.     Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

91.     Defendant's actions directly and proximately caused Plaintiff to suffer and to continue to suffer loss of income and other financial benefits, emotional distress, pain, suffering, stress, humiliation, and loss of enjoyment of life.

<u>**COUNT V**</u>
**Violation of the District of Columbia Family and Medical Leave Act ("DCFMLA")**
**D.C. Code §§ 32-501, *et seq*.**

92.     Plaintiff adopts by reference each of the allegations in the paragraphs above.

93.     At all pertinent times, Defendants are employers subject to provisions of the District of Columbia Family and Medical Leave Act ("DCFMLA").

94.     At all pertinent times, Plaintiff Beachner was an eligible employee entitled to invoke his rights under the DCFMLA.

95.     The District of Columbia Family and Medical Leave Act, D.C. Code §§ 32-501, *et seq*., requires all employers to provide up to sixteen weeks of leave to care for a seriously ill family members and up to sixteen weeks of protected unpaid medical leave to recover from a serious illness or health condition rendering the employee unable to perform his or his job. The leave may also be taken intermittently, in the case of a serious health condition, as defined in the DCFMLA. Under the DCFMLA, employers are prohibited from denying or interfering with an employee's rights under this Act, and from discriminating against an employee because he requests DCFMLA leave or retaliating against an employee because he takes DCFMLA leave.

96.     In willful violation of the DCFMLA, Defendants discriminated and retaliated against Mr. Beachner for taking DCFMLA leave by eliminating his employment. Defendants, at all relevant times, had actual and constructive knowledge of Mr. Beachner's serious health condition and taking of protected medical leave. Plaintiff was out on approved medical leave from November 2021 through February 28, 2022, and was notified of the elimination of his position by Defendants on March 18, 2022, shortly after his most recent taking of medical leave

under DCFMLA. There were no plans to eliminate Mr. Beachner's job prior to when he took

leave, and Defendants only eliminated his job after he took FMLA leave. Plaintiff Defendant

willfully violated the DCFMLA by failing to keep Plaintiff's job protected when returns and

eliminating Plaintiff's position in reprisal for his taking of protected medical leave.

97.     Defendant had no legitimate business reason for any such acts.

98.     Plaintiff is informed and believes, and based thereon, alleges that, in addition to

the practices enumerated above, Defendant may have engaged in other discriminatory practices

that are not yet fully known.

99.     Defendant's actions directly and proximately caused Plaintiff to suffer and to

continue to suffer loss of income and other financial benefits, emotional distress, pain, suffering,

stress, humiliation, and loss of enjoyment of life.

100.     As a result of such acts, Plaintiff has suffered damages.

**COUNT VI**
**Violation of the Family and Medical Leave Act ("FMLA")**
**29 U.S.C. §§ 2601***et seq.* **and 29 C.F.R. §§ 825** *et seq.*

101.     Plaintiff adopts by reference each of the allegations in the paragraphs above.

102.     The Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. and 29

C.F.R. §§  825 *et seq*., requires all employers, including public employers, of twenty or more

employees to provide up to twelve weeks of unpaid family leave for the birth of a child, adoption

or foster care or to care for a seriously ill family member and up to twelve weeks of unpaid

medical leave to recover from a serious illness rendering the employee unable to work.

103.     At all pertinent times, Defendants are employers subject to provisions of the Family and Medical Leave Act.

104.     At all pertinent times, Plaintiff Beachner was an eligible employee entitled to invoke his rights under the Family and Medical Leave Act.

105.     The Family and Medical Leave Act prohibits an employer from denying or interfering with an employee his rights under this Act and prohibits an employer from discriminating against an employee because he requests FMLA leave or retaliating against an employee because he takes FMLA leave.

106.     In violation of the FMLA, Defendants discriminated and retaliated against Plaintiff because Beachner utilized right to take up to twelve weeks of leave under FMLA. There were no plans to eliminate Mr. Beachner's job prior to when he took leave, and Defendants only eliminated his job because he took FMLA leave. Plaintiff Defendant willfully violated the FMLA by failing to keep Plaintiff's job protected when returns and eliminating Plaintiff's position in reprisal for his taking of protected medical leave.

107.     Defendant eliminated Plaintiff's job in retaliation for his use of leave. Defendant, at all relevant times, had actual and constructive knowledge of the conduct described above.

108.     Defendant at all relevant times had actual and constructive knowledge of the conduct described above.

109.     Defendant had no legitimate business reason for any of such acts.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

A.      That the court issue an Order declaring Defendants' actions to be a violation of the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.* ("DCHRA"); Title VII of the Civil Rights Act of 1964, as amended ("Title VII") 42 U.S.C. §§ 2000 *et seq.*; the District of Columbia Family and Medical Leave Act ("DCFMLA") D.C. Code §§ 32-501, *et seq.*; and the Family and Medical Leave Act ("FMLA") 29 U.S.C. §§ 2601 *et seq.* and 29 C.F.R. §§ 825 *et seq.*, and declaring Plaintiff eligible to receive equitable and other relief;

B.      Issue a permanent injunction prohibiting Defendants from engaging in any discriminatory terminations and retaliation;

C.      Enter judgment in favor of Plaintiff against Defendants for all equitable monetary damages available under the law, including but not limited to back pay and front pay in amounts to be determined at trial and all bonuses to which Plaintiff is entitled;

D.      Order Defendants to refrain from any retaliation against Plaintiff or any other person, for participating in or supporting this case in any manner;

E.      Order Defendants, individually and collectively, to pay compensatory and punitive damages in an amount no less than five million dollars ($5,000,000).

F.      Order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees and costs; and

G.      Order Defendants to pay pre-judgment and post-judgment interest as provided by law; and

H.      Any and all relief that this Court deems just.

28

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims against the Defendants.

Date: December 29, 2022                    Respectfully submitted,

       */s/ David A. Branch*

David A. Branch, Esq.
D.C. Bar No. 438764
Law Offices of David A. Branch &
Associates, PLLC
1828 L Street N.W., Suite 820
Washington, D.C. 20036
Phone: (202) 785-2805
Fax: (202) 785-0289
Email: davidbranch@dbranchlaw.com



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Kurt Beachner
_____
                                          Plaintiff
                    vs.

Howard University and Adventist Healthcare
_____
                                          Defendant

Case Number **2022-CAB-006045**

Serve on:
DEFENDANT ADVENTIST HEALTHCARE
820 West Diamond Avenue, Suite 600
Gaithersburg, MD 20878

**SUMMONS**

To the above named Defendant:

　　　You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

　　　You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

David A. Branch
_____
Name of Plaintiff's Attorney

Law Office of David A. Branch & Associates, PLLC
_____
Address

1828 L Street, N.W., Suite 820, Washington, D.C. 20036
_____
(202) 785-2805
_____
Telephone

_Clerk of the Court_

By _____
                                    Deputy Clerk

Date    December 29, 2022

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

　　　If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____

_____ Demandante

contra

Número de Caso: _____

_____
Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

_____
Dirección

Por: _____

Subsecretario

_____

Fecha _____

Teléfono

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy goi (202) 879-4828

만약 번역을 원하시면 (202) 879-4828 로 전화해주십시요           የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ።

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                                   Super. Ct. Civ. R. 4



**Superior Court of the District of Columbia**
**Civil - Civil Division**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**(202) 879-1120 | www.dccourts.gov**

**Case Number:** 2022-CAB-006045

**Case Caption:** Kurt Beachner v. Howard University et. al.

**INITIAL ORDER**

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| 03/31/2023 | 10:00 AM | Remote Courtroom 320 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Robert R Rigsby. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Anita M. Josey-Herring

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb320

   Meeting ID: 129 226 9879

2) When you are ready, click "Join Meeting".
3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.


**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
2) Enter the Webex Meeting ID listed above followed by "##"


**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.

For case questions, call the Civil Division Clerk's Office at (202) 879-1120.

## **ACCESSIBILITY AND LANGUAGE ACCESS**

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘሩትን የጽህፈ ቢሮ (ክለርክ'ስ አፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

  Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.
- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."
- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.
- Witnesses: tell the judge if you want a witness to testify at your hearing.
- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!
- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.
- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.
- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).
- Speak slowly and clearly so everyone hears what you are saying.
- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.
- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.
- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.
- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.
- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
## (Click here for more information)




- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.
- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.
- Look at the camera when you speak and avoid moving around on the video.
- Wear what you would normally wear to court.
- Sit in a well-lit room with no bright lights behind you.
- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.




# District of Columbia Courts

# Tips for Using DC Courts Remote

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings.  The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**

### The remote site locations are:



| | |
|---|---|
| **Remote Site - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Remote Site - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| **Remote Site - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Remote Site - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Remote Site - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Remote Site - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*** No walk-ins at this location*** |

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station**.  If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.
4. A facial covering will be required for entry into the remote hearing location; if you do not have a facial covering one will be provided.

 **\*Safety and security measures are in place at the remote sites.**

 **Contact information to schedule your remote access computer station:**
Call:  **202-879-1900**
Email:  DCCourtsRemoteSites@dcsc.gov

 

## Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de l**unes a viernes, de 8:30 am a 4:00 pm**.

Los centros de acceso remoto son:



**Sitio Remoto - 1**
Balance and Restorative Justice Center
1215 South Capitol Street, SW
Washington, DC 20003

**Sitio Remoto - 2**
Balance and Restorative Justice Center
1110 V Street, SE
Washington, DC 20020

**Sitio Remoto - 3**
Balance and Restorative Justice Center
118 Q Street, NE
Washington, DC 20002

**Sitio Remoto - 4**
Balance and Restorative Justice Center
920 Rhode Island Avenue, NE
Washington, DC 20018

**Sitio Remoto - 5**
Reeves Center
2000 14th Street, NW, 2nd Floor
Community Room
Washington, DC 20009

**Sitio Remoto - 6**
Reeves Center
2000 14th Street, NW, Suite 300N
Office of the Tenant Advocate
Washington, DC 20009
*No se puede entrar sin cita previa*

Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto. Si** necesita adaptaciones especiales, como un intérprete para la audiencia, llame **al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.
2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.
3. Materiales para tomar nota, como papel y lápiz.
4. Para ingresar al sitio de la audiencia remota deberá llevar una mascarilla facial; si no tiene mascarilla facial, se le proporcionará una.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov