APPEAL,CLOSED,JURY,TYPE–H

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:23–cv–00494–TJK</u>
### *Internal Use Only*

| | |
|---|---|
| BEACHNER v. HOWARD UNIVERSITY et al | Date Filed: 02/23/2023 |
| Assigned to: Judge Timothy J. Kelly | Date Terminated: 03/25/2025 |
| Demand: $5,000,000 | Jury Demand: Plaintiff |
| Case in other court:  DC Superior Court, 2022–CAB–006045 | Nature of Suit: 442 Civil Rights: Jobs |
| Cause: 42:2000e Job Discrimination (Employment) | Jurisdiction: Federal Question |

**Plaintiff**

**KURT BEACHNER**                    represented by    **David A. Branch**
LAW OFFICES OF DAVID A. BRANCH
& ASSOCIATES, PLLC
1828 L Street, NW
Suite 820
Washington, DC 20036
(202) 785–2805
Fax: (202) 785–0289
Email: davidbranch@dbranchlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**HOWARD UNIVERSITY**                    represented by    **Frank C. Gulin**
PARGAMENT & HALLOWELL PLLC
1750 K Street NW, Suite 1100
Washington, DC 20006
202–775–0707
Fax: 202–775–0733
Email: FGulin@pandhlaw.com
*ATTORNEY TO BE NOTICED*

**Jeffrey J Pargament**
PARGAMENT & HALLOWELL, PLLC
1776 K Street, NW
Suite 825
Washington, DC 20006
(202) 775–0707
Fax: (202) 775–0733
Email: JPARGAMENT@PANDHLAW.COM
*ATTORNEY TO BE NOTICED*

**Defendant**

**ADVENTIST HEALTHCARE, INC.**                    represented by

**Frank C. Gulin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey J Pargament**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/23/2023 | 1 | NOTICE OF REMOVAL from DC Superior Court, case number 2022–CAB–006045 Filing fee $ 402, receipt number ADCDC–9879882 filed by ADVENTIST HEALTHCARE, INC., HOWARD UNIVERSITY. (Attachments: # 1 Civil Cover Sheet, # 2 Superior Court Documents)(Pargament, Jeffrey) (Entered: 02/23/2023) |
| 02/23/2023 | 2 | NOTICE of Appearance by Frank C. Gulin on behalf of ADVENTIST HEALTHCARE, INC., HOWARD UNIVERSITY (Gulin, Frank) (Entered: 02/23/2023) |
| 02/23/2023 | | NOTICE OF ERROR re 1 Notice of Removal; emailed to JPARGAMENT@PANDHLAW.COM, cc'd 6 associated attorneys –– The PDF file you docketed contained errors: 1. No signature on civil cover sheet, 2. **COMPLIANCE DEADLINE is by close of business today. This case will not proceed any further until all errors are satisfied.** (zrtw, ) (Entered: 02/23/2023) |
| 02/23/2023 | 3 | CIVIL COVER SHEET by ADVENTIST HEALTHCARE, INC., HOWARD UNIVERSITY re 1 Notice of Removal, filed by ADVENTIST HEALTHCARE, INC., HOWARD UNIVERSITY. Related document: 1 Notice of Removal, filed by ADVENTIST HEALTHCARE, INC., HOWARD UNIVERSITY.(Pargament, Jeffrey) (Entered: 02/23/2023) |
| 02/24/2023 | | Case Assigned to Judge Timothy J. Kelly. (zrtw) (Entered: 02/24/2023) |
| 02/24/2023 | 4 | NOTICE to Counsel/Party re 1 Notice of Removal, (Attachments: # 1 Notice and Consent)(zrtw) (Entered: 02/24/2023) |
| 03/02/2023 | 5 | Partial MOTION to Dismiss by ADVENTIST HEALTHCARE, INC., HOWARD UNIVERSITY. (Attachments: # 1 Text of Proposed Order, # 2 Memorandum in Support)(Pargament, Jeffrey) (Entered: 03/02/2023) |
| 03/02/2023 | 6 | Partial ANSWER to Complaint with Jury Demand by ADVENTIST HEALTHCARE, INC., HOWARD UNIVERSITY.(Pargament, Jeffrey) (Entered: 03/02/2023) |
| 03/02/2023 | 7 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by ADVENTIST HEALTHCARE, INC. (Pargament, Jeffrey) (Entered: 03/02/2023) |
| 03/02/2023 | 8 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by HOWARD UNIVERSITY (Pargament, Jeffrey) (Entered: 03/02/2023) |
| 03/09/2023 | 9 | STANDING ORDER. See Order for details. Signed by Judge Timothy J. Kelly on 3/9/2023. (lctjk1) (Entered: 03/09/2023) |
| 03/16/2023 | 10 | Consent MOTION for Extension of Time to File Response/Reply as to 5 Partial MOTION to Dismiss by KURT BEACHNER. (Attachments: # 1 Text of Proposed |

| | | Order)(Branch, David) (Entered: 03/16/2023) |
|---|---|---|
| 03/16/2023 | 16 | Receipt on 3/16/2023 of ORIGINAL FILE, certified copy of transfer order and docket sheet from Superior Court. Superior Court Number 2022–CAB–006045. (mg) (Entered: 07/24/2023) |
| 03/17/2023 | | MINUTE ORDER granting Plaintiff's 10 Consent Motion to Extend Time. It is hereby ORDERED that, *nunc pro tunc* and for good cause shown, Plaintiff's 10 consent motion for an extension of time to respond to Defendants' 5 partial motion to dismiss is GRANTED. It is further ORDERED that Plaintiff shall respond to Defendants' 5 motion by March 30, 2023. Signed by Judge Timothy J. Kelly on 3/17/2023. (lctjk1) (Entered: 03/17/2023) |
| 03/30/2023 | 11 | MOTION for Extension of Time to File Response/Reply as to 5 Partial MOTION to Dismiss by KURT BEACHNER. (Attachments: # 1 Text of Proposed Order)(Branch, David) (Entered: 03/30/2023) |
| 04/03/2023 | | MINUTE ORDER treating as opposed and GRANTING Plaintiff's 11 Motion for Extension of Time. It is hereby ORDERED that, *nunc pro tunc* and for good cause shown, Plaintiff's motion for an extension of time to respond to Defendants' 5 partial motion to dismiss is GRANTED. It is further ORDERED that Plaintiff shall respond to Defendants' 5 motion by April 13, 2023. Signed by Judge Timothy J. Kelly on 4/3/2023. (lctjk1) (Entered: 04/03/2023) |
| 04/13/2023 | 12 | Memorandum in opposition to re 5 Motion to Dismiss filed by KURT BEACHNER. (Branch, David) (Entered: 04/13/2023) |
| 04/20/2023 | 13 | REPLY to opposition to motion re 5 Partial MOTION to Dismiss filed by HOWARD UNIVERSITY. (Gulin, Frank) (Entered: 04/20/2023) |
| 06/21/2023 | | MINUTE ORDER granting Defendants' 5 Motion for Partial Dismissal. Plaintiff has sued Defendants for, among other things, two counts of disparate treatment and hostile work environment on account of race and sex, in violation of, respectively, the D.C. Human Rights Act (Count I) and Title VII (Count III). Defendants move to dismiss those claims to the extent they allege disparate treatment on account of sex and a hostile work environment. The Court will grant the motion. To survive a motion to dismiss, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (cleaned up). Plaintiff's sex–discrimination and hostile–work–environment claims in Counts I and III fall short of this standard. To start, Plaintiff alleges nothing more in support of his sex–discrimination claims than that he is a male and that he was fired because of his sex. His claims are wholly conclusory and plainly deficient. *See, e.g.*, *Bishop v. U.S. Dep't of Agric.*, No. 19–cv–01836 (TNM), 2020 WL 3064421, at *3 (D.D.C. June 9, 2020) (dismissing discrimination claim where plaintiff "allege[s] [only], in conclusory fashion, that he is a member of a protected class who suffered an adverse employment action because of his race" without supporting factual allegations). In response, Plaintiff relies on outdated pleading standards, reinforcing rather than resisting Defendants' arguments for dismissal. *Compare* ECF No. 12 at 17 |

(quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) for the proposition that "all a complaint needs to state is: 'I was turned down for a job because of my race'") *with Yee v. Garland*, No. 21–cv–1185 (ABJ), 2022 WL 2046112, at *7 n.6 (D.D.C. June 7, 2022) (collecting cases holding that *Twombly* and *Iqbal* abrogated *Sparrow*). As for Plaintiff's hostile–work–environment claims, he has not alleged that Defendants subjected him to "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *AyissiEtoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (cleaned up). As the Court sees it, his allegations amount to the sort of "work–related actions," *see Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 111 (D.D.C. 2021), and/or "workplace tribulations, such as petty insults, vindictive behavior, and angry recriminations [that] are not actionable under Title VII," *Dieng v. Am. Insts. for Rsch. in Behav. Scis.*, 412 F. Supp. 3d 1, 15 (D.D.C. 2019) (cleaned up). *See* ECF No. 1–2 58, 78. Plaintiff counters that he "has alleged facts showing that Defendants created an environment by: preferring African American male and female employees who they knew were incompetent; taking assignments away from Plaintiff, whom senior management preferred to work with, and giving them to African American employees; failing to pay wages when due; and creating an overall abusive work environment leading to Plaintiff's termination." ECF No. 12 at 20–21. But Plaintiff's complaint alleges nothing about a "preference" for African American employees whom Defendants "knew were incompetent" or any reassignment of Plaintiff's work. And while Plaintiff does allege that Defendant failed to pay him a bonus, *see* ECF No. 1–2 at 29, he does not allege that the incident bore any nexus to his sex or race––or even to his purportedly discriminatory supervisor. As to the "overall abusive work environment," Plaintiff offers no substantive response to the cases Defendants cite making clear that the remaining incidents he alleges fail to state a hostile–work–environment claim. At bottom, "simply having a rude, harsh, or unfair boss is not enough for a hostile work environment claim." *Dudley v. Washington Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 171 (D.D.C. 2013) (collecting cases). The alleged "incidents of 'harassment,' 'embarrassment,' and ridicule may have been unpleasant and uncomfortable, but taken as a whole, they do not arise to the level needed to support a hostile work environment claim." *Bonnette v. Shinseki*, 907 F. Supp. 2d 54, 81 (D.D.C. 2012). Accordingly, it is hereby ORDERED that Defendants' 5 motion to partially dismiss Counts I and III is GRANTED, and Counts I and III are DISMISSED as far as they allege disparate treatment on account of sex and a hostile work environment. Signed by Judge Timothy J. Kelly on 6/21/2023. (lctjk1) Modified to add hyphen on 6/21/2023 (zkh). (Entered: 06/21/2023)

| 06/22/2023 | | MINUTE ORDER: In light of the Court's Minute Order granting Defendants' 5 motion to partially dismiss the complaint and 6 partial answer to Plaintiff's remaining claims, it is hereby ORDERED that an Initial Scheduling Conference is set for July 24, 2023, at 9:30 a.m. via teleconference. It is further ORDERED that the parties shall meet, confer, and submit a joint report pursuant to Federal Rule of Civil Procedure 26(f) and Local Rule 16.3. The parties shall contact the Courtroom Deputy at (202) 354–3495 at least one business day prior to the hearing to make arrangements to participate. Signed by Judge Timothy J. Kelly on 6/22/2023. (lctjk1) (Entered: 06/22/2023) |
| 07/17/2023 | 14 | MEET AND CONFER STATEMENT. (Attachments: # 1 Text of Proposed Order)(Pargament, Jeffrey) (Entered: 07/17/2023) |
| 07/24/2023 | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Telephonic Initial Scheduling Conference held on 7/24/2023. Scheduling Order to be entered by the court. Telephonic Post–Discovery Status Conference set for 3/5/2024 at 9:30 AM |

| | | |
|---|---|---|
| | | before Judge Timothy J. Kelly. (Court Reporter: Timothy Miller) (zkh) (Entered: 07/24/2023) |
| 07/24/2023 | 15 | SCHEUDLING ORDER. See Order for details. Signed by Judge Timothy J. Kelly on 7/24/2023. (lctjk1) (Entered: 07/24/2023) |
| 02/21/2024 | 17 | Joint MOTION for Extension of Time to *Extend Deadlines* by ADVENTIST HEALTHCARE, INC., HOWARD UNIVERSITY. (Pargament, Jeffrey) (Entered: 02/21/2024) |
| 02/22/2024 | | MINUTE ORDER granting the parties' 17 Joint Motion for Extension of Time. It is hereby ORDERED, for good cause shown, that the parties' 17 joint motion is GRANTED. It is further ORDERED that the Court's July 24, 2023 Scheduling Order is hereby modified as follows: fact discovery shall close on April 26, 2024, and the post–discovery status conference set for March 5, 2024, is RESCHEDULED to May 2, 2024, at 10:30 a.m. via teleconference. The parties shall contact the Courtroom Deputy at (202) 354–3495 at least one business day prior to the hearing to make arrangements to participate. If the parties are unavailable at that time, they shall jointly contact the Courtroom Deputy to determine a mutually agreeable date and time for the parties and the Court. Signed by Judge Timothy J. Kelly on 2/22/2024. (lctjk1) (Entered: 02/22/2024) |
| 04/26/2024 | 18 | Consent MOTION for Extension of Time to Complete Discovery by KURT BEACHNER. (Branch, David) (Entered: 04/26/2024) |
| 05/01/2024 | | MINUTE ORDER granting Plaintiff's 18 Consent Motion for Extension of Time to Complete Discovery. It is hereby ORDERED that Plaintiff's 18 consent motion is GRANTED, and the parties shall complete discovery by May 28, 2024. It is further ORDERED that the post–discovery status conference set for May 2, 2024, is hereby RESCHEDULED for May 30, 2024, at 9:30 a.m. via teleconference. The parties shall contact the Courtroom Deputy at (202) 354–3495 at least one business day prior to the hearing to make arrangements to participate. If the parties are unavailable at that time, they shall jointly contact the Courtroom Deputy to determine a mutually agreeable date and time for the parties and the Court. Signed by Judge Timothy J. Kelly on 5/1/2024. (lctjk1) (Entered: 05/01/2024) |
| 05/28/2024 | 19 | MOTION for Extension of Time to Complete Discovery by KURT BEACHNER. (Attachments: # 1 Exhibit Ex. A HUH 000051)(Branch, David) (Entered: 05/28/2024) |
| 05/29/2024 | 20 | Memorandum in opposition to re 19 Motion for Extension of Time to Complete Discovery filed by ADVENTIST HEALTHCARE, INC., HOWARD UNIVERSITY. (Attachments: # 1 Exhibit One, # 2 Exhibit Two, # 3 Exhibit Three)(Pargament, Jeffrey) (Entered: 05/29/2024) |
| 05/30/2024 | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Telephonic Status Conference held on 5/30/2024. Discovery extended to 6/13/2024, solely for the deposition of Dr. Medley. Telephonic Post–Discovery Status Conference set for 6/20/2024 at 10:00 AM (Audio Line Available) before Judge Timothy J. Kelly. (Court Reporter: Chandra Kean) (zkh) (Entered: 05/30/2024) |
| 06/05/2024 | | NOTICE of Hearing: The Telephonic Post–Discovery Status Conference currently set for 6/20/2024 is hereby **RESCHEDULED** for 6/21/2024 at 9:30 AM before Judge Timothy J. Kelly. (zkh) (Entered: 06/05/2024) |
| 06/21/2024 | | |

| | | |
|---|---|---|
| | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Telephonic Post–Discovery Status Conference held on 6/21/2024. Defendants' Summary Judgment Motion due by 8/5/2024. Plaintiff's Response to Motion for Summary Judgment due by 8/26/2024. Defendants' Reply to Motion for Summary Judgment due by 9/6/2024. Order to be entered by the court. (Court Reporter: Chandra Kean) (zkh) (Entered: 06/21/2024) |
| 06/21/2024 | | MINUTE ORDER: As discussed at today's status conference, it is hereby ORDERED that Defendants shall file their Motion for Summary Judgment by August 5, 2024; Plaintiff shall file his Opposition to Defendants' Motion by August 26, 2024; and Defendant shall file any Reply in support of their Motion by September 6, 2024. Signed by Judge Timothy J. Kelly on 6/21/2024. (lctjk2) (Entered: 06/21/2024) |
| 08/05/2024 | 21 | MOTION for Summary Judgment by ADVENTIST HEALTHCARE, INC., HOWARD UNIVERSITY. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Text of Proposed Order, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit)(Pargament, Jeffrey) (Entered: 08/05/2024) |
| 08/23/2024 | 22 | Consent MOTION for Extension of Time to *File Plaintiffs Opposition to Defendants Motion for Summary Judgment Out of Time* by KURT BEACHNER. (Branch, David) (Entered: 08/23/2024) |
| 08/26/2024 | | MINUTE ORDER granting Plaintiff's 22 Consent Motion for an Extension of Time to File Plaintiff's Opposition to Defendants' 21 Motion for Summary Judgment. It is hereby ORDERED that, *nunc pro tunc* and for excusable neglect shown, that Plaintiff's 22 consent motion is GRANTED. It is further ORDERED that Plaintiff shall file any opposition to Defendants' 21 Motion for Summary Judgment by September 6, 2024, and Defendants shall file any reply by September 16, 2024. Signed by Judge Timothy J. Kelly on 8/26/2024. (lctjk1) (Entered: 08/26/2024) |
| 09/07/2024 | 23 | MOTION for Extension of Time to *to File Plaintiffs Opposition to Defendants' Motion for Summary Judgment* by KURT BEACHNER. (Branch, David) (Entered: 09/07/2024) |
| 09/07/2024 | 24 | Memorandum in opposition to re 21 Motion for Summary Judgment, filed by KURT BEACHNER. (Attachments: # 1 Counter–Statement of Disputed Material Fact, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(Branch, David) (Entered: 09/07/2024) |
| 09/10/2024 | | MINUTE ORDER treating as opposed and granting Plaintiff's 23 Motion for an Extension of Time to File Plaintiff's Opposition to Defendants' Motion for Summary Judgment. It is hereby ORDERED, treating as opposed, *nunc pro tunc*, and for excusable neglect shown, that Plaintiff's 23 motion is GRANTED, and Plaintiff's 24 Memorandum in Opposition shall be treated as timely. Signed by Judge Timothy J. Kelly on 9/10/2024. (lctjk1) (Entered: 09/10/2024) |
| 09/16/2024 | 25 | REPLY to opposition to motion re 21 MOTION for Summary Judgment filed by ADVENTIST HEALTHCARE, INC., HOWARD UNIVERSITY. (Attachments: # 1 Exhibit 17, # 2 Exhibit 18, # 3 Exhibit 19, # 4 Statement of Facts Reply)(Pargament, Jeffrey) (Entered: 09/16/2024) |
| 03/25/2025 | 26 | ORDER granting Defendants' 21 Motion for Summary Judgment. See Order for details. This is a final, appealable Order. The Clerk of Court is directed to close the case. Signed by Judge Timothy J. Kelly on 3/25/2025. (lctjk1) (Entered: 03/25/2025) |

| 03/25/2025 | 27 | MEMORANDUM OPINION in support of the Court's 26 Order granting Defendants' 21 Motion for Summary Judgment. Signed by Judge Timothy J. Kelly on 3/25/2025. (lctjk1) (Entered: 03/25/2025) |
|---|---|---|
| 04/24/2025 | 28 | NOTICE OF APPEAL TO DC CIRCUIT COURT by KURT BEACHNER. Filing fee $ 605, receipt number BDCDC–11642957. Fee Status: Fee Paid. Parties have been notified. (Branch, David) (Entered: 04/24/2025) |

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **KURT BEACHNER,** | |
| *Plaintiff*, | **Case No. 1:23-cv-00494-TJK** |
| **v.** | |
| **HOWARD UNIVERSITY et al.,** | |
| *Defendant.* | |

### <u>NOTICE OF APPEAL</u>

Plaintiff Kurt Beachner, by and through counsel, hereby appeals to the United States Court of Appeals for the District of Columbia Circuit, the United States District Court for the District of Columbia's June 21, 2023 Order granting in part Defendant's Motion to Dismiss and March 25, 2025 Order granting Defendant's Motion for Summary Judgment and all interim orders.

Date: April 24, 2025                     Respectfully submitted,

*/s/ David A. Branch*
David A. Branch
DC Bar # 438764
Law Offices of David A. Branch &
Associates, PLLC
1200 Connecticut Ave, NW
Suite 500
Washington, DC 20036
davidbranch@dbranchlaw.com
(202) 785-2805 phone

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of April, 2025, the foregoing was served

electronically via the CM/ECF filing system on all counsel of record for Defendant listed below.


**Jeffrey J. Pargament, Esq.**
Pargament & Hallowell, PLLC 1776
K Street N.W., Suite 825
Washington, D.C. 20006
Phone: (202) 775-0707
Fax: (202) 775-0733
Email: jpargament@pandhlaw.com

**Frank C. Gulin, Esq.**
Pargament & Hallowell, PLLC
1776 K Street N.W., Suite 825
Washington, D.C. 20006
Phone: (202) 775-0707
Fax: (202) 775-0733
Email: fgulin@pandhlaw.com


*Counsel for Defendant.*



*/s/ David A. Branch*
David A. Branch

**2**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KURT BEACHNER, | |
| *Plaintiff*, | |
| v. | Civil Action No. 23-494 (TJK) |
| HOWARD UNIVERSITY, et al., | |
| *Defendants*. | |

**ORDER**

For the reasons set forth in the Court's accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 21, is **GRANTED**.  Judgment on all remaining counts is hereby **ENTERED** in favor of Defendants.  This is a final, appealable order.  The Clerk of Court is directed to close the case.

**SO ORDERED**.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 25, 2025

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KURT BEACHNER,

    *Plaintiff*,

  v.               Civil Action No. 23-494 (TJK)

HOWARD UNIVERSITY, et al.,

    *Defendants*.

## <u>MEMORANDUM OPINION</u>

  Kurt Beachner, a white man, worked at Howard University Hospital's Cardiac Catheterization Lab, first as a technician and then as its manager. He sues Howard University and Adventist Healthcare, Inc.—who he says jointly employed him—for violating Title VII, the Family and Medical Leave Act, and their District of Columbia counterparts. Beachner alleges he was fired and subjected to a hostile work environment because of his race and sex; retaliated against for complaining about discrimination; and lost his job because he took medical leave. The Court dismissed his hostile work environment and sex-based discrimination claims. Defendants now move for summary judgment on the remaining ones. Finding no triable issue on any of them, the Court will grant Defendants' motion and enter judgment for them.

## I. Background

### A. Factual Background

  In April 2019, Kurt Beachner began working as a technician in Howard University Hospital's Cardiac Catheterization Lab (the "Cath Lab"). ECF No. 24-1 ("CSMF") ¶ 1. The manager of the Cath Lab was a registered nurse, who was hired shortly before Beachner. *Id.* ¶¶ 3–4. The nurse was soon promoted to director of the Cath Lab but resigned in November 2019, leaving both

positions vacant.[1]  *Id.* ¶¶ 5–8.  Beachner was named the Cath Lab's manager in January 2020.  *Id.*

¶¶ 5, 10.  Until a few months earlier, the manager's job description required a nursing degree and

_____

[1] The Court treats Defendants' statement of facts as undisputed for two reasons.

First, and most importantly, Beachner's counter-statement—disputing 47 of 149 facts—is based only on his own declaration, which does not include a statement certifying that he signed it under penalty of perjury as required by Local Rule 5.1(f) and 28 U.S.C. § 1746.  *See* ECF Nos. 24-1, 24-2 at 16 ("Beachner Decl.").  Beachner bears the burden of "establish[ing] a genuine dispute of fact by 'citing to particular parts of the materials in the record, including . . . affidavits or declarations . . . .'"  *Kirkland v. McAleenan*, No. 13-cv-194 (RDM), 2019 WL 7067046, at * 19 (D.D.C. Dec. 23, 2019) (quoting Fed. R. Civ. P. 56(c)(1)(A)).  Either one "must," among other things, "set out facts that would be admissible in evidence."  *Id.* (quoting Fed. R. Civ. P. 56(c)(4)).  But an opposing party may, as Defendants did here, "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible at trial."  *Id.* (quoting Fed. R. Civ. P. 56(c)(2)).  A declaration is "permissible summary judgment evidence not because" it "is itself admissible trial evidence but because it is a statement made under penalty of perjury that provides a substitute for live testimony" and thus can "be converted into admissible evidence."  *Fleck v. Dep't of Veterans Affs. Off. of Inspector Gen.*, 651 F. Supp. 3d 46, 54 (D.D.C. 2023).  Both Local Rule 5.1(f) and § 1746 make "clear that the Court may rely on unsworn declarations . . . only where the declarant signs the declaration under penalty of perjury."  *Downs L. Grp., P.A. v. U.S. Coast Guard*, No. 21-cv-2407 (RBW), 2023 WL 4744044, at *3 n.2 (D.D.C. July 25, 2023); *see* Fed. R. Civ. P. 56(c), Advisory Comm. Note of 2010.  As Defendants note, that requirement is no "mere technicality."  ECF No. 25 at 3.  Without such a certification, Beachner's "statement lacks the [required] indicia of reliability."  *Kirkland*, 2019 WL 7067046, at *19.  It thus "is not competent evidence upon which [he] can rely" and no "basis to preclude summary judgment."  *Id.*  Finally, the Court notes that even though Beachner knew that Defendants asked the Court to treat their statement of material facts as admitted for this reason, ECF No. 25 at 4, he never sought leave to file a sur-reply addressing this issue or a supplemental declaration correcting this problem.

Second, the Court's review of Beachner's counter-statement of material facts shows a pattern of failing to properly controvert Defendants' asserted facts by offering, instead, disingenuous objections and non-responsive facts.  Both Local Rule 7(h)(1) and Federal Rule of Civil Procedure 56(e)(2) "make clear that . . . a court may deem undisputed assertions of fact in a movant's statement of material facts that are not properly 'controverted.'"  *Toomer v. Mattis*, 266 F. Supp. 3d 184, 191 (D.D.C. 2017).  And the Court's Standing Order also warned of that result.  *See* ECF No. 9 at 4.  "An assertion of fact" is not "'controverted' when a non-movant supplies additional," non-responsive "facts and 'factual context' . . . that do not actually dispute the movant's asserted fact."  *Toomer*, 266 F. Supp. 3d at 191 (citation omitted).  But as Defendants have helpfully laid out for the Court, that is all Beachner does.  *See* ECF No. 25-4.  The Court thus "draws from facts submitted by [Defendants] which went undisputed or were inadequately disputed by" Beachner and the record evidence submitted by the parties.  *Cooper v. D.C.*, 279 F. Supp. 3d 156, 159 (D.D.C. 2017).

license. *Id.* ¶¶ 24–26; ECF No. 21-6 ("Joseph Decl.") ¶ 8; ECF No. 21-9 at 5. Because Beachner had neither, this was the first time in "at least fifteen years" that the Cath Lab was not led by a nurse. CSMF ¶¶ 12, 14. So Roxane Joseph and another nurse were asked to supervise the eight nurses working in the Cath Lab when Beachner assumed his role. *Id.* ¶ 13; Joseph Decl. ¶ 5, 7.

In February 2020, Adventist Healthcare, Inc. ("AHU") began managing Howard University Hospital. CSMF ¶ 15. Human resources leadership changed—with Maurice Roche at the top—as did the CEO. CSMF ¶¶ 16, 21; ECF No. 21-4 ("Medley Decl.") ¶ 2. Dr. India Medley became the hospital's new Chief Nursing Officer ("CNO"). CSMF ¶ 16; Medley Decl. ¶ 2. She reviewed all "nursing services lines," including the Cath Lab, CSFM ¶ 17, and "was immediately concerned that the only managerial employee"—Beachner—"was not a registered nurse," but a technician. Medley Decl. ¶ 4. Dr. Medley thought "that a Cath Lab should be led by a registered nurse" for "patient safety." *Id.* ¶ 5. She voiced those concerns to Roche. ECF No. 21-5 ("Roche Decl.") ¶ 6. Both thought that District of Columbia nursing regulations required that Cath Lab nurses be supervised and evaluated by a registered nurse. Roche Decl. ¶ 7; Medley Decl. ¶ 5. So they investigated how Beachner got the position and learned that the hospital's prior management had modified the manager job description to omit the nursing license requirement to allow Beachner to be hired. CSMF ¶¶ 22–27; Roche Decl. ¶ 6; Medley Decl. ¶ 8; *see* ECF No. 21-8 at 4.

Dr. Medley conferred with a CNO at another facility, who advised her to appoint a registered nurse as director of the Cath Lab as soon as possible. CSMF ¶¶ 28–29. But the hospital could not afford to hire a new director. *Id.* ¶ 32. So Dr. Medley instead asked Joseph to serve as director on an interim basis and without additional pay. *Id.* ¶¶ 30, 32. She accepted. Joseph Decl. ¶ 7. To Dr. Medley, that was a good enough short-term solution to the lack of nursing leadership in the unit. CSMF ¶ 34; Medley Decl. ¶ 12. Beachner, for his part, could stay on as manager.

CSMF ¶ 36.  Still, because Joseph was directing other units of the hospital at the same time, Dr. Medley intended to hire a permanent director sooner than later.  CSMF ¶¶ 33, 35.

Then COVID struck.  CSMF ¶ 39.  Beginning in March 2020, the hospital saw a rapid influx in patients and scrambled to secure adequate supplies of protective gear, arrange for testing and vaccination of employees, and ensure compliance with government guidelines.  *Id.* ¶ 40.  The hospital also struggled to retain and recruit nurses and had to rely on costly agency nurses, which strained its finances even more.  *Id.* ¶¶ 41–42.  And, in early 2021, the hospital began negotiating a new collective bargaining agreement with the union representing its nurses.  *Id.* ¶ 43.  All that placed "considerable demands on Dr. Medley's time," so hiring a new Cath Lab director became less a priority.  *Id.* ¶¶ 44–45.

Meanwhile, the Cath Lab "performed satisfactorily" under Joseph's leadership.  CSMF ¶ 46.  Problem was, Beachner and Joseph did not get along.  Beachner did not think Joseph was qualified to lead the Cath Lab because she lacked cardiovascular knowledge.  *Id.* ¶ 48.  Nor did he think the unit needed supervision by a nurse.  *Id.* ¶ 47.  Joseph felt that Beachner was resistant to her leadership.  *Id.*  In July 2020, Joseph issued the first of three written reprimands to Beachner after he obtained a quote for the purchase of capital equipment without her approval.  *Id.* ¶¶ 37, 52–53; ECF No. 21-11 at 2.  Beachner, in turn, complained to human resources that the write-up was false.  CSMF ¶ 55; ECF No. 21-7 at 286:16-287:7.  Although Joseph's performance evaluation of Beachner in October that year concluded that Beachner had met expectations, CSMF ¶ 58, a month later, Beachner complained about unlawful discrimination against him, *id.* ¶ 57.

Joseph reprimanded Beachner a second time in October 2021 when Beachner failed to ensure adequate EKG technician coverage twice, CSMF ¶ 59; ECF No. 21-11 at 3, and a third time in November 2021, when a Cath Lab nurse informed Joseph that Beachner had refused to allow

her to take a break, CSMF ¶¶ 62–64; ECF No. 21-11 at 4.  That same month, Beachner complained to the hospital's CEO about Joseph's "unethical behavior" of evaluating the Cath Lab's nurses without his input and requested that she "be removed from [his] reporting structure as Director of Cardiology." ECF No. 24-3 at 7.  Dr. Medley, who was copied on the email, reached out to Beachner.  *Id.* at 13–14.  She reminded him of "the proper chain of command," noting it was "[her] responsibility to receive [his] concerns and complaints," and asked that Beachner meet with her "to discuss" them.  *Id.*

At that meeting, Beachner informed Dr. Medley that he was experiencing health issues.  CSMF ¶ 97; ECF No. 24-3 at 20.  Dr. Medley encouraged him to take a medical leave of absence, which he did.  CSMF ¶¶ 98–99; ECF No. 24-3 at 20.  Beachner's leave was designated as covered under the Family and Medical Leave Act.  *Id.* ¶ 99.  While on leave, Beachner filed a charge of discrimination with the EEOC.  *Id.* ¶ 106.  Also, in January 2021, while on leave, Beachner asked about a signing bonus he claimed he was promised as part of an agreement with the hospital's prior management.  *Id.* ¶¶ 68–69.  Roche, who was unfamiliar with it, investigated and learned that the hospital agreed to pay him a $15,000 bonus—half in January 2020 and half in January 2021.  *Id.* ¶ 70.  That came as a "surprise" to Roche given the hospital's poor financial condition in 2020, and because signing bonuses were unusual.  *Id.* ¶ 71.  Still, he approved the bonus in mid-February, and Beachner received it a few days later.  *Id.* ¶¶ 72–73.

Before Beachner went on leave, AHC began a comprehensive review of all cardiovascular services at the hospital, including the Cath Lab.  CSMF ¶ 75.  In early 2021, AHC Vice President Helen Tuffee, who spearheaded that effort, met with Dr. Medley to discuss the leadership situation in the Cath Lab.  *Id.* ¶¶ 74–77.  Tuffee agreed that it should be led by a director with a nursing license, and Dr. Medley asked her to refer candidates.  *Id.* ¶ 78.  She received two leads, but neither

panned out. *Id.* ¶¶ 79–82. In September 2021, Tuffee issued a written report with her findings about the hospital's cardiovascular service line. *Id.* ¶ 83; ECF No. 21-12 at 2–4. Among other things, she noted that although interim director Joseph "appear[ed] to be a great Nursing director for Critical care," Tuffee "[was] not sure she [wa]s the right person to support the [cardiovascular] service line." ECF No. 21-12 at 4. Instead, she recommended "someone with a [cardiovascular] background . . . who ha[d] grown services from the ground up" and who could "work with [Beachner] to mentor him." *Id.* Tuffee also recommended that she "work" with Beachner and a recruiter to fill nursing vacancies in the unit. *Id.* at 3.

Based on that report, Dr. Medley concluded she "need[ed] to a hire a Director" with "a nursing license and more cardiovascular expertise than Ms. Joseph." Medley Decl. ¶ 24. She conferred with Roche in October 2021, and together they agreed that the Cath Lab manager position "should be eliminated" for two main reasons. *Id.* ¶ 28; Roche Decl. ¶ 10; CSMF ¶ 87. One, the position would be "redundant" if the hospital hired a director who, unlike Joseph, "would be able to focus exclusively on the Cath Lab." Roche Decl. ¶ 10; Medley Decl. ¶ 25. Two, the hospital, "which continued to lose money," could not afford to pay two managerial salaries within a low-patient-volume unit. Roche Decl. ¶ 10; Medley Decl. ¶ 26. So the "plan[]" was "to eliminate the position once a Director was hired." Medley Decl. ¶ 28.

Dr. Medley then asked Tuffee for more candidate referrals. CSMF ¶ 95. In late December 2021, while Beachner was on leave, Tuffee recommended Ifeanyi Nkwocha for the director position. *Id.* ¶ 111. Dr. Medley thought he was an "ideal candidate," and emailed Roche about him on January 12, 2022. *Id.* ¶¶ 112–13. "[A]s discussed," she said, "we have to a nurse [sic]" as director of the Cath Lab "with cardiac/cath lab/cardiology experience," which "[wa]s part of our planned restructuring and growth of the" unit. ECF No. 21-14 at 2. Dr. Medley was "impressed"

after interviewing Nkwocha, and recommended setting up interviews with others, including Roche. *Id.* A few days later, Dr. Medley emailed Roche again, memorializing their "discussion" the day before about "Restructuring the Cardiac Cath Lab to have a Director and no Manager." CSMF ¶ 115; ECF No. 21-15 at 2. "This has been our plan for several months in response to the requirement for the cardiology/cath lab leader to be a nurse with cardiology and leadership experience," she said. ECF No. 21-15 at 2. Yet the "one Manager" in the unit "[wa]s not a nurse." *Id.* Though the unit also had a director, "per best practices and professional regulations, we must have a [registered nurse] leader with cardiology experience." *Id.* She explained that Nkwocha came "highly recommend[ed]" and again requested that he be interviewed by certain managers and physicians. *Id.* After further interviews, the hospital offered him the job. CSMF ¶ 118. But Nkwocha and the hospital did not agree on his compensation, so he rejected the offer on March 14. *Id.* ¶ 119; Medley Decl. ¶ 33.

Dr. Medley then decided to post the director position for other applicants. CSMF ¶ 120; Medley Decl. ¶ 33. To do that, however, Dr. Medley had to "to complete a requisition form"— which had to be approved by the hospital—"and eliminate Mr. Beachner's position." Roche Decl. ¶ 14; CSMF ¶ 121; Medley Decl. ¶ 34. Dr. Medley signed the form on March 16, 2022. ECF No. 21-16 at 2. The form explained that the hospital was "phasing[] out [the] Manager position" as part of the Cath Lab's "[r]estructuring" and restoring the Director position that had been vacated in 2019. CSMF ¶ 123; ECF No. 21-16 at 2.

Beachner was supposed to resume work on March 2, 2022. CSMF ¶ 107. But Dr. Medley "had concerns about the adequacy of the medical documentation he presented," so his return was delayed until March 10. CSMF ¶ 108; Medley Decl. ¶ 45. Still, he was paid for the days he would have worked during that period. CSMF ¶ 109. A week after Beachner's return, Roche told him

that his position had been eliminated and he would be terminated.  *Id.* ¶ 127; ECF No. 21-17 at 2.

Roche memorialized that decision in a March 18 letter, explaining that the hospital "ha[d] decided

to replace the Manager position with a Director-level position, which w[ould] require a nursing

licensure" so that the director could "supervise and evaluate nurses" consistent with "District of

Columbia law."  ECF No. 21-17 at 2.  Beachner would be placed on administrative leave until

April 7, the latter stated, and a recruiter would help him find "other roles within the organization."

*Id.*  Indeed, the hospital offered him a position in the Cath Lab, but Beachner rejected it because

"he no longer wished to work under Ms. Joseph."  CSMF ¶ 129.

No one replaced Beachner as manager of the Cath Lab.  CSMF ¶ 130.  And after he was

let go, the hospital posted the director position for external applicants.  *Id.* ¶¶ 130–31.  Though it

considered hiring an "agency nurse" with the required expertise, the cost of doing so would have

been "prohibitively expensive."  *Id.* ¶ 133.  But in May 2022, Nkwocha reached out to Dr. Medley

and told her he would accept the position after all.  *Id.* ¶ 134.  After he arrived in July that year,

and with help from a "lead Tech," Nkwocha performed all of Joseph *and* Beachner's duties.  *Id.*

¶¶ 135–37.

### B.    Procedural Background

In late December 2022, Beachner sued Howard University and AHC, whom he considers

his joint employers, in the Superior Court for the District of Columbia.  ECF No. 1-2.  Beachner

brought six claims under federal and D.C. law.  In Counts One and Three, he alleged that Defend-

ants fired him and created a hostile work environment because of his sex and race in violation of

Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* (Count Three) and the District of

Columbia Human Rights Act, D.C. Code §§ 2-1401, *et seq.* ("DCHRA") (Count One).  Compl.

¶¶ 53–63, 73–82.  In Counts Two and Four, he alleged that Defendants retaliated against him for

engaging in activity protected under Title VII (Count Four) and the DCHRA (Count Two).  *Id.* ¶¶ 64–72, 83–91.  And in Counts Five and Six, Beachner alleged that Defendants fired him because he took leave protected under the Family and Medical Leave Act, 29 U.S.C. §§ 260, *et seq.*, (Count Six) and the D.C. counterpart, D.C. Code §§ 32-501, *et seq.* (Count Five).  *Id.* ¶¶ 92–109.

Defendants removed the case, ECF No. 1, and moved to dismiss Counts One and Three to the extent that Beachner claimed Defendants discriminated against him because of his sex (not his race) and subjected him to a hostile work environment because of his sex and race, ECF No. 5. The Court granted the motion.  Defendants now move for summary judgment on the remaining claims: racial discrimination (Counts One and Three), retaliation for engaging in protected activity (Counts Two and Four), and retaliation for taking FMLA leave (Counts Four and Five).  ECF No. 21.

## II.    Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court asks whether, "viewing the evidence in the light most favorable to the non-movant[] and drawing all reasonable inferences accordingly," a "reasonable jury could reach a verdict in [that party's] favor."  *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).  To survive summary judgment, a plaintiff must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation omitted).  Courts "are not to make credibility determinations or weigh the evidence."  *Lopez*, 826 F.3d at 496 (citation omitted).  But the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

## III. Analysis

Defendants seek summary judgment on all remaining claims. First, they contend that no reasonable jury could find that Defendants discriminated against Beachner because of his race by firing him. They assert he was fired for a legitimate, nondiscriminatory reason: Defendants eliminated the manager position as part of the Cath Lab's restructuring. Second, Defendants say no reasonable jury could find that Defendants retaliated against him for complaining about interim director Joseph. Defendants reiterate that he was fired for legitimate reasons, and that is the only possible adverse retaliatory action at issue. Third, Defendants argue, no reasonable jury could find that Beachner was terminated for taking FMLA leave. Defendants are right on all fronts.

### A. Defendants Are Entitled to Summary Judgment on Beachner's Race Discrimination Claims under Title VII and the DCHRA

Both Title VII of the Civil Rights Act and the D.C. Human Rights Act prohibit employers from terminating employees because of their race. *See* 42 U.S.C. § 2000e-2(a); D.C. Code § 2-1402.11(a)(1)(A). Where, as here, a plaintiff has no direct evidence of discrimination, the Court applies the familiar *McDonnell Douglas* burden-shifting framework.[2] *Francis v. D.C.*, 731 F. Supp. 2d 56, 77 (D.D.C. 2010). Typically, that framework requires a plaintiff to establish a prima facie case of discrimination, after which the burden of production then shifts to the employer to produce a legitimate, nondiscriminatory reason for its employment action. *McDonnell Douglas*

---

[2] "Courts look to case law construing Title VII . . . in analyzing claims under the analogous provision[] of the [DCHRA]." *Robinson v. Red Coats, Inc.*, 31 F. Supp. 3d 201, 209 n.4 (D.D.C. 2014); *see Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 886 (D.C. 2008).

*Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). If the employer does so, the burden shifts back to the plaintiff to show that the asserted reason was a pretext for discrimination. *Id.* If a defendant offers a legitimate, nondiscriminatory reason for its actions, "the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original). Rather, the Court must "resolve one central question," considering "all relevant evidence presented by" the parties: has the plaintiff "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason[,] and that the employer intentionally discriminated against the plaintiff on the basis of race . . . ?" *Id.*

In this case, whether Beachner makes out a prima facie case "drops out of the picture" because Defendants have proffered a legitimate, nondiscriminatory reason for terminating him. *Brady*, 520 F.3d at 493; *see* ECF No. 21-1 at 28–29. Indeed, Defendants assert one of the "two most common legitimate reasons for termination"—they "eliminat[ed]" Beachner's "position altogether." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015) (cleaned up). And Defendants offer extensive evidence to support that contention. For example, it is undisputed that the Cath Lab had been led by a nurse "for at least the past fifteen years" before Beachner became the unit's manager, and that Dr. Medley and Roche thought the Cath Lab's nurses should be supervised by a registered nurse, not a technician like Beachner. CSMF ¶¶ 12, 14, 18–21, 26.[3]

---

[3] The Court reiterates that, for the reasons explained above, it treats Defendants' statement of facts as undisputed. Along with the overarching problem that Beachner's counter-statement is not signed under penalty of perjury, and thus can play no role in opposing Defendant's motion, the counter-statement never actually contradicts Defendants' statement of facts. To take just one example, Beachner purports to dispute Defendants' statement that "Dr. Medley was immediately concerned that the only managerial employee in the Cath Lab, Mr. Beachner, was not a registered nurse." CSMF ¶ 18. Beachner says that the "statement is false as Ms. Medley was provided with plaintiff qualification to run the Cath Lab." *Id.* That non-responsive assertion does not "actually dispute" Defendants' statement. *Toomer*, 266 F. Supp. 3d at 191.

It is also undisputed that the hospital decided it needed to replace interim director Joseph—who had stepped in for free as a short-term solution to the lack of nursing leadership in the unit—with a registered nurse who could work full-time at overseeing the Cath Lab and who had cardiovascular expertise. *Id.* ¶¶ 30–34, 83–86, 93–94, 113–115, 124. So Beachner could at best serve as a manager under the new director. *Id.* ¶¶ 36, 92; ECF No. 21-12 at 4. And it is also undisputed that the hospital determined the manager position would be redundant once the unit had a new director because that person could perform all of Beachner's functions—which interim director Joseph could not, as she was overseeing other hospital components at the same time. *Id.* ¶¶ 33, 87–88, 136–137. Nor is there any dispute that the hospital could not afford to pay two managerial salaries at once. *Id.* ¶¶ 32, 89–91.

So Beacher must proffer evidence from which a reasonable jury could find—after considering all the relevant evidence—that Defendants' asserted nondiscriminatory reason "was not the actual reason," and that they instead intentionally discriminated against him on the basis of race. *Evans v. Sebelius*, 716 F.3d 617, 620 (D.C. Cir. 2013). He can do so in many ways, including by offering evidence that "similarly situated employees outside [his] protected group" were treated more favorably, that Defendants' explanations are "inconsistent or dishonest," or that they "deviat[ed] from established procedures or criteria." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C. Cir. 2016). Beachner comes up well short of meeting that burden.

To begin, Beachner argues that "there were no plans to restructure the Cath Lab and eliminate his position in September 2021," when Tuffee recommended to Dr. Medley that "someone with a [cardiovascular] background" replace Joseph as the unit's director. ECF No. 24 at 3, 20; *see* ECF No. 21-12 at 4. Indeed, says Beachner, elsewhere in her report Tuffee said that Beachner should "take on a more active role in filling vacant nursing positions." ECF No. 24 at 20, 23; *see*

12

ECF No. 21-12 at 3 ("I will work with [Beachner] and his recruiter to see . . . how we could make the positions more attractive."). But Beachner fails to explain why that is relevant. To the extent that he suggests Tuffee's email shows that Defendants are lying, he misses the mark. Defendants never claimed Tuffee recommended that Beachner's position be cut. Instead, the undisputed facts show that Dr. Medley and Roche reached that conclusion in October 2021 based on Tuffee's recommendation that Johnson be replaced by a new director—because the manager position would be redundant, and the hospital could not afford to pay both. CSMF ¶¶ 32–33, 87–91, 136–137.

Second, Beachner tries to undermine Defendants' proffered nondiscriminatory reason by arguing that "there are no contemporaneous records to confirm any plans" to eliminate his position "in October, November[,] or December 2021." ECF No. 24 at 20. And he hints that Defendants manufactured their justification after the fact by pointing to an email Dr. Medley sent to Roche on January 19, 2022. *Id.* In it, Dr. Medley explained that "[r]estructuring the Cardiac Cath Lab to have a Director and no Manager . . . has been our plan for several months in response to the requirement for the cardiology/cath lab leader to be a nurse with cardiology and leadership experience." ECF No. 21-15 at 2.

Defendants, for their part, do not dispute the lack of contemporaneous documentation in late 2021. ECF No. 25 at 11–12. But they correctly point out that this hardly undermines Defendants' proffered reason because they were not "requir[ed]" to document their decision-making process. *Id.* (citing *Jackson v. Gonzales*, 496 F.3d 703, 709–10 (D.C. Cir. 2007)). More than that, as courts have recognized, "the absence of contemporaneous evidence is hardly unusual," because "employers ordinarily do not 'publish a contemporaneous statement of reasons every time they'" decide to "hir[e] or fir[e]" someone. *Adeyemi v. D.C.*, 525 F.3d 1222, 1228 (D.C. Cir. 2008) (quoting *Jackson*, 496 F.3d at 710)). The Court sees little "significance in the timing of"

13

Defendants' first documented "explanation" for eliminating Beachner's position.  *Id.*  It is undisputed that Dr. Medley was concerned about the lack of nursing leadership from the start, that Johnson's appointment to interim director was a short-term solution to that problem, and that Defendants agreed she should be replaced by a full-time director.  CSMF ¶¶ 34, 83, 87; Medley Decl. ¶ 12.  And, as already noted, it is also undisputed that the hospital could not afford to keep Beachner on as manager if a full-time director was hired.  CSMF ¶¶ 32, 89–91.  Indeed, as more evidence on that score, Defendants *never* replaced Beachner as manager.  *Id.* ¶ 129.  That Dr. Medley first spelled out her reasons for nixing Beachner's position in a January 2022 email does not matter, especially because the other evidence aligns with her statement that Defendants "plan[ned]" to "restructure" the Cath Lab "for several months."  ECF No. 21-15 at 2.

Beachner also argues that Tuffee expressed "genuine[] surprise[]" when he told her via text message "that his position had been eliminated."  ECF No. 24 at 21.  That is, she replied, "Oh my." *Id.*  But even if the Court were to consider that message, and it does not, this sliver of evidence hardly moves the needle.[4]  Assuming Tuffee's cryptic response showed genuine surprise, it would

---

[4] Beachner cannot rely on these text messages to oppose Defendants' motion because he failed to produce them in discovery.  Under Federal Rule of Civil Procedure 26(e), a party "who has responded to an interrogatory, request for production, or request for admission" as part of formal discovery under Rule 26(b) "must supplement . . . its disclosure" when "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other part[y] during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  Rule 37(c)(1), in turn, provides that "a party" who "fails to provide information" as required by Rule 26(e) "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  That rule "is a self-executing sanction," *Elion v. Jackson*, 544 F. Supp. 2d 1, 5 (D.D.C. 2008), that is properly applied here.

The text messages between Beachner and Tuffee are responsive to at least three of Defendants' requests for production of documents: documents that "reference or in any way relate to [Beachner's] employment with HUH"; documents, including "communications with any current or former employee or agent of Defendants"; and "electronic/digital/computer files not specifically

serve as evidence of pretext only if Defendants claimed that *Tuffee* had decided to eliminate the

Cath Lab manager position.  But Defendants do not say that.  Instead, they say only that Tuffee's

recommendation—to hire a new Cath Lab director to replace Joseph—led to *Dr. Medley and*

*Roche's* decision to cut Beachner's position.

Beachner next contends that a reasonable jury could conclude that Defendants' reason is

pretextual because he was treated differently than a similarly situated employee who is not white.

ECF No. 24 at 21–22.  He claims that Derek Perkins, who also does not have a nursing license,

"currently is still maintaining supervisory authority over nurses in Interventional Radiology."  ECF

No. 1-2 ¶ 44.  This argument fails too.  To raise a reasonable inference of race discrimination based

on comparator evidence, Beachner must show that Defendants "treated other employees of a dif-

ferent race more favorably in the same factual circumstances."  *Snowden v. Zinke*, 506 F. Supp. 3d

18, 34 (D.D.C. 2020) (citation omitted).  That is, he must "demonstrate that 'all of the relevant

aspects of [his] employment situation were nearly identical to those of the [other]' employee."

*Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (quoting *Holbrook v.*

*Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999)).  He fails to do so.  Defendants explain that Beachner

and Perkins had different roles in different units.  ECF No. 21-1 at 32.  Perkins served as director

of Radiology, overseeing managers, before he was promoted to executive director—"an even

---

requested . . . which you believe will support or in any way relate to your claims in this case."
ECF No. 25-2 at 5, 8.  But Beachner did not produce them.  ECF No. 25 at 7.  Then, during his
deposition in April 2024, Beachner disclosed his possession of text messages with Tuffee, and
Defendants asked that they be produced.  ECF No. 21-7 at 4–5.  Still, Beachner failed to produce
them.  Defendants followed up with Beachner's counsel three times via email or letter—to no
avail.  ECF No. 25-3 at 2–3, 5; ECF No. 21-7 at 7.  Because Beachner violated Rule 26(e) by
failing to supplement his discovery responses, Rule 37's automatic sanction kicks in unless Beach-
ner can show the violation was "substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).
He has not even tried to do so, so he cannot rely on these text message to oppose Defendants'
motion.

higher-level position." *Id.*; CSMF ¶¶ 138, 140.  Beachner, by contrast, was a manager in his unit, serving under an interim director.  And unlike the Cath Lab, Radiology is not a "nursing line of service," CSMF ¶ 141, so Perkins—whether as director or executive director—was not required to have a nursing license, *id.* ¶¶ 148, 149.  Beachner disputes none of that.  But, he says, "whether two employees are similarly situated presents a question of fact for the jury."  ECF No. 24 at 21– 22 (quoting *George v. Leavitt*, 407 F.3d 405, 414 (D.C. Cir. 2005)).  Not so.  It is Beachner's "burden to prove his comparator[] [was] similarly situated," *Gulley v. D.C.*, 474 F. Supp. 3d 154, 167 (D.D.C. 2020), and here, the undisputed evidence shows that "all of the relevant aspects" of Beachner's "employment situation" were distinct from Perkins'.  *Burley*, 801 F.3d at 324.  Thus, summary judgment in Defendants' favor is appropriate.  *See, e.g.*, *Gulley*, 474 F. Supp. 3d at 167 ("[T]he lack of evidence of similarity is itself reason to grant summary judgment."); *Walker v. McCarthy*, 170 F. Supp. 3d 94, 108 (D.D.C. 2016) ("[W]here a plaintiff relying on comparator evidence fails to produce evidence that the comparators were actually similarly situated to him . . . summary judgment is appropriate."); *cf. George*, 407 F.3d at 414 (concluding that "a reasonable jury *could* conclude that [plaintiff] and the other engineers were similarly situated") (emphasis added).

Finally, Beachner argues that "Defendant deviated from standard procedures by terminating [him]," ECF No. 24 at 23.  He is right that such a deviation can support an inference of pretext, but he points to no evidence to support his claim.  Indeed, he does not even identify the "standard procedures" that Defendants purportedly disregarded.

In sum, Beachner has offered no evidence that would permit a reasonable jury to find that Defendants' proffered reason for terminating him was not the real reason, let alone that it was a pretext for discriminating against him because of his race.  So the Court will grant summary

judgment to Defendants on Beachner's racial discrimination claims under Title VII and the DCHRA.

### B.    Defendants Are Entitled to Summary Judgment on Beachner's Retaliation Claims under Title VII and the DCHRA

Beachner also claims that Defendants retaliated against him for engaging in protected activity.  But because no reasonable jury could conclude that Defendants fired him for complaining about Joseph's written reprimands or her allegedly discriminatory treatment—and his firing is the only cognizable adverse action—the Court finds that Defendants are entitled to summary judgment on these claims as well.

To establish a prima facie case of retaliation under Title VII and the DCHRA, Beachner must show that (1) he engaged in protected activity, (2) Defendants took an adverse employment action, and (3) a causal link connects the two.  *See Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012); *see Ranowsky v. Nat'l R.R. Passenger Corp.*, 244 F. Supp. 3d 138, 143 (D.D.C. 2017), *aff'd*, 746 F. App'x 23 (D.C. Cir. 2018) (noting that retaliation claims under Title VII and the DCHRA are analyzed the same).  Because the *McDonnell Douglas* burden-shifting framework applies to such claims as well, *see Ranowsky*, 244 F. Supp. 3d at 143, the Court again must zero in on the "ultimate question whether all of the evidence, taken together, supports an inference of retaliation when the employer has proffered a legitimate, non-discriminatory reason for the adverse action at issue," *Sledge v. D.C.*, 63 F. Supp. 3d 1, 19 (D.D.C. 2014).

Applying that framework here is, at first blush, no easy task because Beachner combines a hodgepodge of putative adverse actions that he thinks were retaliatory.  So the Court pauses to sort through them first.  An "adverse action" is one "that a reasonable employee would have found . . . materially adverse," meaning "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S.

53, 68 (2006).  It typically "involves a significant change in employment status, such as hiring, firing, [and] failing to promote," but "does not reach every minor employment action that an irritable, chip-on-the-shoulder employee did not like."  *Holmes v. Washington Metro. Area Transit Auth.*, 723 F. Supp. 3d 1, 16 (D.D.C. 2024) (cleaned up and citations omitted).  Defendants do not dispute that Beachner's termination fits the bill.  ECF No. 21-1 at 35.  But they argue that none of the other actions at issue qualify.  Those run the gamut from Joseph's written reprimands to scoldings, an attempt to recruit Cath Lab nurses to replace him, and the delayed payment of his signing bonus.  Compl. ¶¶ 28–29, 38, 69, 88; ECF No. 21-1 at 35–39.  The Court agrees with Defendants.

As for Joseph's written reprimands, "the D.C. Circuit 'has held that formal criticisms or reprimands, without additional disciplinary action such as a change in grade, salary, or other benefits, do not constitute adverse employment actions.'"  *Holmes*, 723 F. Supp. 3d at 17 (quoting *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002)).  A reprimand can, however, rise to that level "if it serves as 'a building block' that justifies an adverse action down the road."  *Id.* (quoting *Robb v. Vilsack*, No. 20-cv-0929 (RC), 2021 WL 3036796, at *13 (D.D.C. July 19, 2021)).  Joseph's reprimands do not meet that standard because it is undisputed that none of Joseph's three written reprimands resulted in a change in grade, salary, or other benefits, CSMF ¶ 67, and that those reprimands were no factor in Defendants' decision to eliminate Beachner's position, *id.* ¶ 126.  Moreover, by failing to respond to Defendants' argument that the reprimands do not qualify as adverse actions, Beachner concedes the point.  *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003); ECF No. 24 at 25–27.

Nor can Beachner rely on any "scolding" by Joseph because "rude, harsh, or unfair workplace slights are not adverse actions supporting a retaliation claim."  *Harris v. Trustees of Univ. of D.C.*, 567 F. Supp. 3d 131, 155 (D.D.C. 2021); *see Brooks v. Grundmann*, 748 F.3d 1273, 1277–

78 (D.C. Cir. 2014) ("[T]he ordinary tribulations of the workplace, a series of petty insults, vindictive behavior, and angry recriminations . . . are not actionable under Title VII." (cleaned up)). And Beachner offers no response here either. *See* ECF No. 24 at 25–27. As for Joseph's alleged efforts to recruit nurses to replace him, the obvious problem with that argument is that those efforts, assuming they happened, did not materialize. That is, Joseph never replaced Beachner with anyone. Nor could she, as she had no authority to hire a replacement. CSMF ¶ 104. *See Ramos v. Garland*, 77 F.4th 932, 938 (D.C. Cir. 2023) (explaining that "the antiretaliation provision does not protect an individual from all retaliation, but from retaliation that produces an injury or harm" (cleaned up and citation omitted)). Here too, no response from Beachner.

That leaves only the delayed payment of Beachner's signing bonus, which he should have received in January 2022 but did not until a month later. Defendants argue that mere delay in payment does not rise to an adverse employment action. ECF No. 21-1 at 38; CSMF ¶ 72. The Court is inclined to agree; indeed, Beachner's reliance on *Bell v. Gonzales* proves the point. That court rejected the defendants' argument "that the *lost* overtime [pay] . . . was nominal and thus nonactionable," because "employment actions resulting in *loss* of income in amounts less than at issue [in that case] are actionable." 398 F. Supp. 2d 78, 97 n.18 (D.D.C. 2005) (emphases added and citations omitted); *see Douglas v. Donovan*, 559 F.3d 549, 553 (D.C. Cir. 2009) (reasoning that "the *loss* of a bonus" is actionable (emphasis added)). Beachner lost no money at all. In any event, even if a delay in payment qualified—perhaps it caused the employee some tangible harm—it is undisputed that the payment was delayed for legitimate, non-retaliatory reasons. That is, Beachner does not dispute that the bonus came late "because [Roche] needed to investigate his entitlement to the payment and confer with other management personnel," while he also "had many other demands on his time, including issues arising out of the ongoing COVID-19 pandemic."

19

CSMF ¶ 73. And Beachner does not argue that these reasons were pretextual. ECF No. 21-1 at 38–39; ECF No. 24 at 25–27. So any retaliation claim based on the delayed payment fails.[5]

The only remaining question, then, is whether Beachner has identified evidence from which a jury could conclude that his *termination* was retaliatory. The answer is no. As noted, Defendants have met their burden of articulating a legitimate, non-retaliatory reason for that action—the elimination of his position. Thus, it is up to Beachner to "produce sufficient evidence" to allow a reasonable jury to conclude that Beachner's termination was instead the result of unlawful retaliation for his complaints against Johnson. *Holmes*, 723 F. Supp. 3d at 19. He fails to do so. But Beachner offers no argument at all that Defendants' reason for terminating him was retaliatory. *See* ECF No. 24 at 25–27.

To the extent that Beachner seeks to rely on the arguments he marshalled for his race discrimination claim, the Court has already rejected them. As relevant here, there is no evidence that Johnson participated in the decision to eliminate Beachner's position. CSMF ¶¶ 87, 125, 127. And there is no evidence that the reprimands Johnson issued—which Beachner complained were false—factored into Defendants' decision to fire him. CSMF ¶ 126 *see Kilby-Robb v. Devos*, 246 F. Supp. 3d 182, 201–02 (D.D.C. 2017) (granting summary judgment on retaliation claim where decisionmakers "all attested that neither" the individuals about whom plaintiff complained, "nor any other official played any role in" plaintiff's non-selection, "nor influenced their decision in

---

[5] In resisting Defendants' argument that only Beachner's termination qualifies as an adverse action, Beachner also argues that "removal of duties that affects a plaintiff's 'future employment opportunities' can constitute adverse actions." ECF No. 24 at 27. But to the Court's knowledge, he has never alleged that Defendants stripped him of any duties during his employment. More importantly, he provides no evidence to support such a claim.

any way").[6]

Because Beachner has offered no evidence that creates a genuine issue of material fact about whether Defendants terminated him in retaliation for engaging in protected activity, the Court will grant summary judgment to Defendants on Beachner's retaliation claims.

### C.    Defendants Are Entitled to Summary Judgment on Beachner's Retaliation Claims under the federal and D.C. FMLA

Finally, Beachner claims that Defendants terminated him in retaliation for taking leave protected by the federal and D.C. FMLA. Once again, however, he fails to overcome Defendants' legitimate, non-retaliatory reason for firing him. So the Court will grant summary judgment on these remaining claims too.

The FMLA and its D.C. counterpart entitle an employee to take temporary medical leave from employment "without the threat of[] or actual termination from [his] job," thus prohibiting the employer to discriminate against the employee for taking such leave. *Dorsey v. Jacobson Holman, PLLC*, 756 F. Supp. 2d 30, 33 (D.D.C. 2010). Both statutes "create[] . . . retaliation claims," which courts analyze "under the same legal framework." *Thomas v. D.C.*, 227 F. Supp. 3d 88, 98 (D.D.C. 2016) (citations omitted). Conveniently, that is the *McDonnell Douglas* burden-shifting regime, again. *Id.* at 99. So, as Defendants have proffered a non-retaliatory reason for Beachner's termination, the Court need not slog through any prima facie factors. The crux of the

---

[6] Although Beachner does not press this point, the Court notes that Beachner filed a charge of discrimination in December 2021 and was terminated in March 2022, and "an adverse action that occurs shortly after protected activity" can support a finding of retaliation. *Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001). But "positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine." *Id.* (quoting *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007)). Beachner has identified no such positive evidence from which a jury could conclude that Defendants' proffered explanations were a pretext for retaliation.

issue—again—is whether Beachner can show that "those stated grounds are pretextual," *i.e.*, that Defendants fired him because he took FMLA leave. *Id.* at 100. He cannot.

Recognizing that Beachner's FMLA leave and termination were close in time, Defendants argue, correctly, that temporal proximity alone cannot "dislodg[e] an employer's nonretaliatory explanation as pretextual." ECF No. 21-1 at 42 (quoting *Hamilton v. Nat'l R.R. Passenger Corp.*, No. 19-cv-1986 (TNM), 2020 WL 6781234, at *7 (D.D.C. Nov. 18, 2020). Instead, Beachner needs "positive evidence" beyond that. *Id.* But all he musters is a reference to Tuffee's September 2021 email to Dr. Medley, in which Tuffee recommended that "someone with a [cardiovascular] background" replace Joseph as director of the Cath Lab and said that she "will work with [Beachner]" to fill nursing vacancies in the Cath Lab. ECF No. 21-12 at 4; *see* ECF No. 24 at 28. Beachner claims the email shows "Tuffee [had] plans for [him] to remain in his position," which Dr. Medley "agree[d]" to by responding, "I will incorporate this information in our strategic planning, effective immediately." ECF No. 24-3 at 45; ECF No. 24 at 28. But that is not the "smoking gun" that Beachner thinks it is. ECF No. 24 at 28. For one thing, Dr. Medley nowhere "agree[d]" that Beachner should "remain in his position," as Tuffee did not make such a recommendation. For another, this email tracks with Defendants' account of how Beacher's position came to be eliminated. That is, about a month after "Tuffee recommended that Ms. Joseph be replaced by a Director with cardiovascular experience," Dr. Medley "concluded" that "hiring . . . a new Director" would require "eliminat[ing] . . . Beachner's position." ECF No. 25 at 20; CSMF ¶¶ 84–87, 121. So, as Defendants put it, the "wheels were already in motion for terminating [Beachner]" before he took FMLA leave. *Chloe v. George Wash. Univ.*, No. 20-cv-3090 (EGS), 2023 WL 6199076, at *9 (D.D.C. Sept. 22, 2023) (internal quotation marks omitted); ECF No. 21-1 at 42.

Thus, Beachner is wrong that Tuffee's email "coupled with" the lack of contemporaneous "documentation" creates a "genuine issue" for trial.  ECF No. 24 at 28.  The Court has already explained why the latter is immaterial.  And nothing plus nothing equals nothing.  Because Beachner has presented no evidence that suggests Defendants' proffered reasons were false and that Defendants fired him because he took medical leave, the Court will grant their motion for summary judgment on Beachner's FMLA and D.C. FMLA retaliation claims.

## IV.    Conclusion

For all the above reasons, the Court will grant Defendants' Motion for Summary Judgment. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 25, 2025